GAIDRY, J.
|2The plaintiff in a “slip and fall” personal injury lawsuit appeals the summary *780 judgment of the trial court which dismissed the defendant-appellee Security National Properties, L.L.P. entirely from the lawsuit, with prejudice. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On December 15, 2004, plaintiff-appellant Kevin Roca (Roca), an employee of BellSouth, was dropping off Christmas gifts in the American Way building where he worked, located at 3854 American Way, Baton Rouge, Louisiana. The building is owned and managed by Security National Properties, L.L.P. (Security National). While in the break room, Roca slipped on a freshly mopped floor, evidenced by a visible sheen on the floor and a mop leaning against the wall. Roca sustained injuries from his fall.
Roca filed a petition for damages on December 15, 2005. He named Security National as a defendant under the theory that the break room was under the care and control of Security National. He also named as a defendant 123 Cleaning Crew, because Roca claimed that someone had mopped the break room floor prior to his fall, and that they were negligent for leaving the floor wet without posting any warning signs.
Through the course of litigation, it was discovered that a Larry McCray was responsible for mopping and other janitorial services for Security National, and he was subsequently named as a defendant by Roca in his first supplemental and amending petition, filed April 18, 2006. Over the course of two depositions with Mr. McCray, a dispute arose over whether he was employed by Security National or was an independent contractor hired by Security National to perform janitorial services. During these depositions it was also discovered that Mr. McCray may have hired |3one or both of his twin sisters Loyce McCray (Loyce) and Joyce McCray (Joyce) to assist him with his duties on the evening of Roca’s injuries. Roca identified a heavy-set African American woman as being present in the break room and witnessing his fall. His physical description is a fair approximation of the physical descriptions of Loyce and Joyce; however, Roca did not know them by name, and did not state he saw either one of them or anyone else mopping at the time of his fall.
Both Larry McCray and Security National filed motions for summary judgment requesting dismissal from the lawsuit. The trial court denied McCray’s motion on January 10, 2011, but granted Security National’s motion on March 21, 2011. The judgment also denied a motion for summary judgment filed by McCray to declare him an employee of Security National. That motion, however, is not a subject of this appeal. As a result, Roca filed this appeal, largely, according to Roca, due to the trial court’s own admission that it was wrong in granting Security National’s motion for summary judgment while denying Mr. McCray’s. Roca feels it necessary to correct this supposed error and to keep Security National in the lawsuit.
ASSIGNMENT OF ERROR
Roca’s sole assignment of error is that the trial court erred in granting the motion for summary judgment in favor of Security National, because there are still issues of material fact surrounding whether any of Security National’s employees caused Kevin Roca’s injuries through their negligence.
STANDARD OF REVIEW
The standard of review on a motion for summary judgment is de novo, where the appellate court must use the same criteria as the trial court to |4determine whether summary judgment was proper. Breaux *781 v. Bene, 95-1004 (La.App. 1st Cir.12/15/95), 664 So.2d 1377, 1379.
DISCUSSION

General Principles of Vicarious Employer Liability

La.C.C. Article 2320 states in relevant part:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed. (Emphasis added)
Applying the Civil Code article to this case, Security National would be responsible for Roca’s injury if it were caused by an employee of Security National. It is well settled that independent contractors are not employees of the principal for whom they provide services and would not be considered as employees for purposes of art. 2320, unless they were engaging in some type of ultrahazardous work. Triplette v. Exxon Corp., 554 So.2d 1361, 1362 (La.App. 1st Cir.1989).
Factors to determine whether an independent contractor relationship exists is established by Hulbert v. Democratic State Central Committee of Louisiana, 2010-1910, p. 4, 5 (La.App. 1st Cir.6/10/11), 68 So.3d 667, 670. The factors to consider are as follows:
1. A valid contract exists between the parties;
2. The work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it;
3. The contract calls for specific piecework as a unit to be done according to the contractor’s own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered;
4. There is a specific price for the overall undertaking; and
5. The duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
|sIn other words, to determine whether someone is an independent contractor, one must look at his degree of control over the work. While the principal has the ability to oversee the results of the contractor’s work, the principal in no way influences the manner in which the contractor does the work. Id., at p. 5, 68 So.3d at 670. Conversely, an employer has a great amount of control over an employee’s work, such as the nature of the task and where it is to be performed, setting the wage, and the power of dismissal. 12 William E. Crawford, Louisiana Civil Law Treatise: Tort Law § 9:5 (2nd Ed.2009).
Applying these principles, Security National would be liable for the tortious acts of its employees, but not for the acts of independent contractors with whom it is the principal. The independent contractor would be liable for his own tortious acts, as well as for the acts of anyone employed by him.

Is the Tortfeasor an Employee of Security National?

The identity of the person who mopped the floor on which Roca slipped is in dispute; however, what the question asks is: if that person, whoever he or she may be, could in any circumstance be an employee of Security National?
BellSouth Telecommunications, Inc. (BellSouth) leased office space from Security National in the American Way building. Page 15 of the lease directs Security National, as landlord, to “provide for the cleaning and maintenance of the Common *782 Areas of the Building and the Property ... but not the Leased Premises.” Security National therefore had a duty under the lease to maintain one part of the building (the Common Areas) but not the other (the Leased Premises). Security National admits to being responsible for the maintenance and care of the break room where Roca fell. We take this to mean that the break room is located in the Common Areas.
|fiBeIlsouth had contracted with FBG Service Corporation (FBG), who subcontracted with Service Master of New Orleans (Service Master), to clean and maintain the Leased Premises for which BellSouth was responsible. Judgment was rendered on May 29, 2009, dismissing both FBG and Service Master from the lawsuit, with prejudice. That judgment is not part of this appeal, but we mention it here in order to eliminate these two cleaning services as possible tortfeasors in this case. With all cleaning service providers contracted by BellSouth eliminated, only cleaning service providers employed or contracted by Security National remain in this inquiry. In his second supplemental petition for damages, Roca named only three entities as responsible for janitorial services at the American Way building: Larry McCray d/b/a Larry’s Janitorial Service, FBG, and Service Master. We now turn our inquiry to Larry McCray.
The appellant states in his brief that the evidence in the record is clear that Mr. McCray was not even present in the American Way building on December 15, 2004. Mr. McCray’s absence from the building makes it impossible for him to be liable for Mr. Roca’s injury, except possibly as an employer of the person who mopped the floor, and therefore the issue of whether Mr. McCray is an employee of Security National or an independent contractor working on behalf of Security National does not need to be answered here, since Security National can in no way be held liable for the actions of the third party who mopped the floor in question. One possibility raised by Roca in his deposition is that either Loyce or Joyce McCray mopped the floor, since immediately after his fall Roca saw a heavy-set African American woman who fits the physical descriptions of Loyce and Joyce, along with two African American males in their late teens or early twenties who Roca speculated were the woman’s children. We will remain |7silent on the issue of liability of Loyce and/or Joyce, but we will examine their status as either employees or independent contractors.
In his first deposition on October 25, 2007, Larry McCray stated that at no time has he ever had members of his family helping him or bringing their own family members into the building, but then admits that in 2005 he had received a complaint about bringing children into the building after work hours. McCray explained that this was done by a woman who took his place for a day when he was sick. McCray said the woman’s name was “Lois.”[1] Mr. McCray stated her last name was Williams, that he knew her through a friend, and that he no longer had contact with her. He paid Ms. Williams in cash for assisting him, but did not keep a record of his payment to her.
On January 4, 2010, an affidavit of Joyce McCray was entered into the record, where she stated that she was not present at the American Way building on Deeem- *783 ber 15, 2004, did not perform mopping or other janitorial services there, and was not employed by Larry McCray or Larry’s Janitorial Service, then or ever. Joyce was subsequently deposed on April 7, 2010. She testified that both she and her twin sister Loyce were normally engaged in the occupations of housekeeping and janitorial services. Contradicting the affidavit, Joyce stated she had worked for her brother Larry McCray, only in 2002, at (in her words) “the BellSouth building,” located at 3854 American Way Drive, the same address as the American Way building. She stated that Larry had asked her to help him with his work there. He told her to come in between 5:30 and 6:00 a.m., then return at 5:30 p.m. Larry provided her a security card so that she could enter the building. Larry told her what duties she needed to complete. One of her duties was mopping floors. Larry also |sprovided to her keys to the janitorial closet and showed her where the supplies were. Larry periodically checked on her to see how she was progressing with her work. She denied having any other overseers. Her understanding of the work relationship was that she worked for Larry and he had the sole power to fire her if he chose. Larry paid her cash on the 1st and 15th of each month, in the amount of $25.00 a day. Never at any time did she meet any staff of Security National. None of the Security National staff deposed in this matter ever stated that they met Joyce McCray or knew who she was. She terminated her working relationship with Larry by verbally expressing to him her desire to do so, and neither she nor Larry were required to seek permission or ratification from anyone else.
Based on Joyce’s answers in her deposition, Larry McCray was deposed again on April 21, 2010. In this deposition, he admitted that his sister Joyce had worked for him in the past. He also admitted that his sister Loyce had worked for him at the American Way building in the past. Loyce worked for him from June 29 to July 15 of 2004. The work routine and conditions he had laid out for Loyce were similar to what he had laid out for Joyce. He stated that it was he and not Security National who chose Joyce and Loyce to come work for him.
Loyce McCray was deposed on May 11, 2010. She verified that she and her sister Joyce had assisted their brother Larry with his work at the American Way building. Loyce also verified Larry’s statement that she worked for him from June 29 to July 15 of 2004, after Larry approached her to ask for her assistance. Although the duties Larry gave to her are similar to those he gave to Joyce, Loyce emphatically stated without prompting that she did not do any mopping at the American Way building. She stated after two weeks, Larry paid her with a check. She did not receive payment from | ¡¡anyone else for her services. Although she did not remember if she or Larry ended the business relationship, there was no third party involved. She denied having dealings of any kind with Security National.
While the record suggests Larry McCray has a contract on record with Security National, there is a total absence of any contract, employment application, written agreement, or other document which reflects a business relationship between Loyce or Joyce McCray with Security National. There seems to have been a business relationship between Larry McCray and his sisters, but the nature of those relationships does not have to be answered here. What we must answer is whether or not Loyce and Joyce McCray had a business relationship of some kind with Security National, and the record is very clear that no relationship of any kind existed. Loyce and Joyce McCray were *784 neither employed by, nor were independent contractors for, Security National.

Genuine Issues of Material Fact?

There is no question that there are disputed facts in this case. The trier of fact at the district court level will have the task of determining who, if anyone, created the unsafe condition in the break room that may have caused Mr. Roca’s injury. We see no question, however, on the issue of Security National’s liability. No employees of Security National could have caused Mr. Roca’s injury. Since Loyce and Joyce McCray are suspected as possible tortfea-sors, although they were not named as defendants, we found it necessary to determine their status with Security National. There is no genuine issue of material fact when it comes to whether Security National had a business relationship with Loyce or Joyce McCray. Despite any misgivings the trial court may have had about its ruling in this matter, we affirm that ruling today.
11ftDECREE
The trial court’s granting of the motion for summary judgment in favor of the defendant-appellee, Security National Properties, L.L.P., and against the plaintiff-appellant, Kevin Roca, is affirmed. Security National is dismissed from the lawsuit, with prejudice. Costs of this appeal are assessed to the appellant, Kevin Roca.
AFFIRMED.
HUGHES, J., dissents with reasons.

. The woman’s name is spelled "Lois” in the deposition; however, the name would be pronounced the same as “Loyce.”