McDonald, j.
|Jn this appeal, a visitor who slipped and fell at a hospital challenges a summary judgment dismissing her claim for damages against the hospital. We affirm.
FACTS AND PROCEDURAL HISTORY
On February 13, 2005, Joy Smith and Cynthia Bester went to visit a patient in the intensive care unit at Northshore Regional Medical Center (NRMC) in Slidell, Louisiana. As they walked down a hospital hall, Ms. Smith slipped, fell, and injured her left knee, left hip, and back. She filed a petition for damages against NRMC,[2] alleging she fell in a puddle of water at a location in the hall where a “worker” had been using a buffer machine immediately prior to the accident. NRMC answered the petition, and later filed a third party demand, naming Hospital Housekeeping Systems, LLC, (HHS) and Philip Stevens, as third party defendants. NRMC alleged it had contracted with HHS to perform housekeeping services, and that, at the time of the accident, HHS’s employee, Mr. Stevens, was buffing the floor where Ms. Smith fell. HHS answered the third party demand and admitted its contractual relationship with NRMC. Ms. Smith then amended her petition to add HHS as a defendant. In their respective responsive pleadings, NRMC and HHS both alleged the comparative fault of Ms. Smith and each other.
In due course, NRMC filed a motion for summary judgment, seeking dismissal of Ms. Smith’s claims against it. NRMC argued summary judgment was proper because, as a property owner, it could not be held liable for conditions on its premises created by an independently-contracted maintenance company, HHS, where that maintenance company was contractually obligated to maintain the area where the accident occurred. Ms. Smith and HHS opposed the summary judgment, contending there were disputed issues regarding NRMC’s liability based on its separate negligence and/or the control it maintained over HHS.
After a hearing, the trial court signed a judgment, dated January 3, 2014, granting NRMC’s motion for summary judgment *176 and dismissing Ms. Smith’s claims against it. Ms. Smith appeals contending the trial court erred by granting the summary | .judgment without considering NRMC’s potential liability.
DISCUSSION
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by LSA-C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Summary judgment shall be rendered in favor of the mover if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion, show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B)(2).[3] An appellate court reviews a trial court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. In re Succession of Beard, 13-1717 (La.App. 1 Cir. 6/6/14), 147 So.3d 753, 759-60. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material, for purposes of summary judgment, can be seen only in light of the substantive law applicable to the case. Gaspard v. Graves, 05-1042 (La.App. 1 Cir. 3/29/06), 934 So.2d 158, 160, writs denied, 06-0882, 06-0958 (La.6/16/06), 929 So.2d 1286, 1289.
The substantive law applicable in this case is tort law. Every act of man that causes damage to another obliges him by whose fault it happened to repair it. LSA-C.C. art. 2315. Under a negligence standard, a hospital owes a duty to its visitors to exercise reasonable care for their safety, commensurate with the particular circumstances involved. Terrance v. Baton Rouge General Medical Center, 10-0011 (La.App. 1 Cir. 6/11/10), 39 So.3d 842, 844, writ denied, 10-1624 (La.10/8/10), 46 So.3d 1271. As the plaintiff in this slip- and-fall case, Ms. Smith must show that she slipped, fell, and was injured because of a foreign substance on the hospital’s premises. The burden then shifts to the hospital to exculpate itself from the presumption of |4negligence.[4] Id. Thus, as the mover on the motion for summary judgment, NRMC retained the burden of showing that there was no genuine issue of material fact regarding its lack of negligence. See LSA-C.C.P. art. 966(C)(2).
In support of its motion, NRMC introduced evidence demonstrating that, at *177 the time of Ms. Smith’s accident, NRMC and HHS had a contract in place whereby HHS was responsible for the daily cleaning and floor care of NRMC patient rooms and public/common areas, including corridors.[5] The contract provided that HHS was an independent contractor responsible for hiring and supervising all staff necessary to provide the contracted services. Thus, according to NRMC, the evidence demonstrates Ms. Smith’s injuries were caused by the actions of an independent contractor’s employee (or her own carelessness), and that there is no evidence suggesting any negligence by NRMC.[6]
In opposition, Ms. Smith argues that, notwithstanding the NRMC-HHS contract,_]^there are disputed factual issues regarding the level of control NRMC exerted over HHS in the performance of its duties; thus, she contends, NRMC may still be liable for her damages, and summary judgment was inappropriate. In support of her position, Ms. Smith points to several provisions of the NRMC-HHS contract, suggesting that these provisions negate a true independent contractor relationship between NRMC and HHS. She also introduced evidence indicating that Travis Sisson, the NRMC officer who supervised the hospital’s housekeeping department, interacted daily with Bill Walker, the HHS manager who had an onsite office in the hospital, regarding housekeeping issues.
The significance of an independent contractor relationship is that the principal is generally not liable for the tortious acts an independent contractor commits in the course of performing its contractual duties. See Smith v. Zellerbach, 486 So.2d 798, 801 (La.App. 1 Cir.), *178 writ denied, 489 So.2d 246 (La.1986). The factors used to determine the existence of an independent contractor relationship are: (1) a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (8) the contract calls for specific piecework as a unit to be done according to the contractor’s own methods, without being subject, to the control and direction of the principal, except as to result; (4) there is a specific price for the overall undertaking; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. Tower Credit, Inc. v. Carpenter, 01-2875 (La.9/4/02), 825 So.2d 1125, 1129; Hulbert v. Democratic State Central Committee of Louisiana, 10-1910 (La.App. 1 Cir. 6/10/11), 68 So.3d 667, 670, writ denied, 11-1520 (La.10/7/11), 71 So.3d 816.
The primary focus in determining whether a relationship is a principal-independent contractor relationship or an employer-employee relationship is the right to exercise control over the work. Hulbert, 68 So.3d at 670-71. Ms. Smith argues that the following provisions of the NRMC-HHS contract indicate that NRMC exerted control over HHS: HHS employees are required to adhere to NRMC rules and regulations, abide Rby the terms of the NRMC-HHS contract, and comply with NRMC’s drug screening policy. Further, HHS is required to meet certain internal and external performance standards and is subjected to NRMC’s quarterly performance review. Regarding floor care of common areas, the NRMC-HHS contract requires that HHS dry mop, wet mop, and spray buff all corridor floors at specified intervals.[7]
We have reviewed these provisions and do not find that they show NRMC exerted the type of control over HHS that would negate an independent contractor relationship. Mr. Sisson’s deposition testimony confirms this finding. He explained that, as NRMC’s chief operating officer, he supervised the hospital’s housekeeping department, which, at the time of Ms. Smith’s fall, was outsourced to HHS. As part of his regular daily rounds, he interacted with HHS’s director, Bill Walker, who had an office at NRMC. Although Mr. Sisson would mention any housekeeping concerns to Mr. Walker, he did not interact with any HHS employee below the management level. HHS hired its own employees, assigned their job responsibilities, and had them submit daily reports to HHS regarding task completion. HHS had its own policy of soliciting feedback from NRMC departments regarding satisfaction with its cleaning, and Mr. Sisson met with upper level HHS management on a quarterly basis to review this feedback. Mr. Sisson acknowledged that HHS employees attended NRMC’s new employee orientation and had to adhere to NRMC rules but clarified that NRMC referred any HHS employee discipline issues to Mr. Walker to handle. Thus, although HHS was required to adhere to certain NRMC rules and policies, and had a specific schedule for floor care maintenance, it was HHS, not NRMC, which maintained control over HHS employees and the methods by which their work was accomplished.
Further, the summary judgment evidence included the testimony of three witnesses indicating that Ms. Smith slipped in water on the hall floor and identifying Mr. *179 Stevens as the HHS employee who was attending to the floors in the area where she fell. In her deposition, Ms. Smith stated that, as she walked down NRMC’s second floor hall toward the intensive care unit, she slipped in water on the floor. After the' incident, [7she saw a tall white male with brownish-blonde hair in the hall with a buffing machine. Later, when she returned to NRMC to get a copy of the accident report, she saw the man again and he identified himself to her as Philip Stevens. Ms. Smith’s testimony is consistent with that of her companion, Ms. Bes-ter, who was with Ms. Smith when she fell. Ms. Bester stated that she saw the water on the floor after Ms. Smith fell. She, too, saw a man, who appeared to be wearing a uniform, standing in the hall with some type of floor-cleaning equipment. Both Ms. Smith and Ms. Bester testified that they did not see the water before Ms. Smith fell, did not see a sign warning of wet floors, and that the man they observed in the hall reacted with amusement when he saw Ms. Smith fall. Lastly, Ms. Louisa Brown, an NRMC orderly, testified that a HHS “housekeeping guy,” whom she described as a white, older, tall male wearing an HHS uniform, was mopping the hall floor near the ICU, when she saw Ms. Smith slip and fall. Ms. Brown indicated that the floor was wet, there was no warning sign of wét floors, and she was “pretty positive” that the HHS employee’s mopping was the source of the water. Ms. Brown assisted Ms. Smith from the floor and took her to the emergency room in a wheelchair. Ms. Brown recognized the HHS employee from having previously seen him working at NRMC and confirmed that he laughed when he saw Ms. Smith fall. In response to discovery requests, HHS produced documentation confirming that Philip Stevens, a white male, was an HHS employee on the date of Ms. Smith’s accident.
After a de novo review of the summary judgment evidence, we conclude NRMC proved its entitlement to summary 'judgment. The NRMC-HHS contract establishes that HHS was an independent contractor and that HHS was responsible for floor care at the hospital, which included the hospital halls. The contract itself and Mr. Sisson’s testimony demonstrate that, although NRMC and HHS had regular interaction regarding maintenance issues, such interaction occurred at the supervisory level, and HHS itself maintained control over its employees and the manner in which its floor care services at NRMC were accomplished. The testimony of Ms. Smith, Ms. Bester, and Ms. Brown establishes that Mr. Stevens, HHS’s employee, was tending to the floors in the hall where Ms. Smith fell, that she fell in water, and that there was no warning signs of wet floors. Although Ms. Smith argues that the source of the water on the floor is disputed, |sthe only evidence presented indicates the source of the water was Mr. Stevens’ floor care activities. Summary judgment cannot be defeated by mere argument; here, none of the evidence presented creates a genuine issue of material fact precluding summary judgment. See Hawkins v. Fowler, 11-1495 (La.App. 1 Cir. 5/2/12), 92 So.8d 544, 547-48, writ denied, 12-1449 (La.10/8/12), 98 So.3d 860.
Thus, the foregoing evidence demonstrates that there is no genuine issue of material fact that NRMC is not liable to Ms. Smith for any damages she suffered as a result of the slip and fall. No action by NRMC negated the existence of the independent contractor relationship it had with HHS; nor is there any evidence that any separate action by NRMC was causally related to Ms. Smith’s slip and fall. The trial court correctly granted summary judgment in this case.
*180 CONCLUSION
The trial court’s January 3, 2014 judgment, granting the motion for summary judgment filed by Northshore Regional Medical Center, L.L.C. d/b/a Northshore Regional Medical Center, and dismissing Joy Smith’s claims against Northshore Regional Medical Center, L.L.C. d/b/a North-shore Regional Medical Center, is affirmed. Costs of the appeal are assessed to Joy Smith.
AFFIRMED.

. In her petition, Ms. Smith named North-shore Regional Medical Center, Inc. and Northshore Medical Center, L.L.C. as defendants. In its answer, the defendant identified itself as Northshore Regional Medical Center, L.L.C. d/b/a Northshore Regional Medical Center. We refer to the defendant as NRMC.

. The summary judgment in this case was signed on January 3, 2014; thus, it is governed by the version of La. C.C.P. art. 966 in effect after its amendment by 2013 La. Acts, No. 391, § 1, effective August 1, 2013. See Ciolino v. First Guaranty Bank, 12-2079, 1280 (La.App. 1 Cir. 10/30/13), 133 So.3d 686, 690 n. 3. Changes implemented by a later amendment to La. C.C.P. art. 966 are not implicated in this appeal. See 2014 La. Acts, No. 187, § 1, effective August 1, 2014.

. As noted in Connelly v. Veterans Administration Hospital, No. 12-2660 (E.D.La.5/15/14), 23 F.Supp.3d 648 (E.D.La.2014), Louisiana Courts of Appeal differ on the appropriate burden of proof in a slip and fall case against a defendant hospital. The majority approach, which this court used in Terrance, 39 So.3d at 844, involves a burden-shifting scheme that only requires a plaintiff to initially prove that her fall occurred and injury resulted from a foreign substance on the premises; the minority approach, adopted by the Second Circuit Court of Appeal, requires the plaintiff to prove the hospital had actual or constructive knowledge of the foreign substance. See Holden v. Louisiana State University Medical Center-Shreveport, 29,268 (La.App. 2 Cir. 2/28/97), 690 So.2d 958, 963, writ denied, 97-0797 (La.5/1/97), 693 So.2d 730.

. The contract, titled "Hotel Service Outsourcing Agreement,” was originally executed in 1999 between Tenet Health System Medical, Inc., NRMC’s owner, and HHS. [R170, 229] Ms. Smith's reference to additional contract provisions pertaining to the 1999 transition of housekeeping duties from NRMC to HHS are not relevant to NRMC's level of control over HHS in 2005.

. Further, relying on Roca v. Security National Properties-Louisiana Limited Partnership, 11-1188 (La.App. 1 Cir. 2/10/12), 102 So.3d 778, writ denied, 13-0233 (La.4/1/13), 110 So.3d 583, NRMC argues that the existence of the NRMC-HHS maintenance contract was sufficient to exculpate itself .from any negligence and warranted the grant of summary judgment in its favor. In granting summaty judgment in favor of NRMC, the trial court stated that it was bound to follow Roca. In that case, a building lessee's employee sued the building owner/lessor for injuries he sustained when he fell on a freshly mopped floor in one of the building's break rooms. The building owner/lessor moved for summary judgment based on evidence that it had contracted the cleaning and maintenance of the common areas of the building, including the subject break room, to an outside service provider. Roca, 102 So.3d at 781-82. The trial court granted the building owner/lessor's motion. On appeal, this court affirmed the summary judgment, noting that there was no question - regarding the building owner/lessor's lack of liability, because there was no evidence at all that the suspected tortfea-sor(s), one of two persons responsible for mopping the floor, had a business relationship with the building owner/lessor, either as employees or as independent contractors. See Roca, 102 So.3d at 783-84.
The facts of the present case are distinguishable from those in Roca. In this case, it is undisputed that Mr. Stevens, the suspected tortfeasor, was -an employee of HHS on the date of the Ms. Smith's fall, and that HHS was the independent contractor NRMC hired to care for the hospital’s floors. Thus, because there is evidence of a business relationship among these parties, unlike the lack of such in Roca, the reasoning of Roca does not mandate summary judgment in this case. However, appeals are taken from judgments, and not reasons for judgment; thus, if the trial court reached the proper result, the judgment should be affirmed. Elliott v. Elliott, 10-0755 (La.App. 1 Cir. 9/10/10), 49 So.3d 407, 413 n. 3, writ denied, 10-2260 (La. 10/27/10), 48 So.3d 1088.

. Ms. Smith’s reference to additional contract provisions pertaining to the 1999 transition of housekeeping duties from NRMC to HHS are not relevant to NRMC’s level of control over HHS in 2005.