STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-959


RONNAESA REIDER

VERSUS

CHRISTUS HEALTH SOUTHWESTERN LOUISIANA, ET AL.


**********


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2013-5129
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE


**********


**MARC T. AMY**
**JUDGE**


**********


Court composed of Marc T. Amy, Billy Howard Ezell, and Shannon J. Gremillion, Judges.


**REVERSED AND REMANDED.**

**Jerald L. Album**
**Suzanne M. Ganucheau**
**Reich, Album & Plunkett, L.L.C.**
**3850 N. Causeway Boulevard, Suite 1000**
**Metairie, LA   70002**
**(504) 830-3999**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Hospital Housekeeping Systems, LLC**

**Mark A. Delphin**
**Arthur J. O'Keefe**
**Delphin Law Offices**
**626 Broad Street**
**Lake Charles, LA   70601**
**(337) 439-3939**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Ronnaesa Reider**

**Marne Jones**
**Beirne, Maynard & Parsons, LLP**
**601 Poydras Street, Suite 2200**
**New Orleans, LA   70130-6097**
**(504) 586-1241**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Christus Health Southwestern Louisiana**

**AMY, Judge.**

The plaintiff filed suit against the defendant hospital and the defendant maintenance company due to injury allegedly sustained in a fall at the hospital. She filed a motion for summary judgment against the maintenance company, submitting a video of the incident as well as witness statements indicating that liquid was on the floor. Following a hearing, the trial court entered summary judgment in favor of the plaintiff. The resulting judgment indicated both that the maintenance company was fully at fault in causing the plaintiff's fall and that the plaintiff was free of fault. The maintenance company appeals. For the following reasons, we reverse and remand.

## Factual and Procedural Background

The plaintiff, Ronnaesa Reider, filed this matter after falling in the hallway of Christus Health Southwestern Louisiana d/b/a Christus St. Patrick Hospital. By her petition, the plaintiff alleged that, on August 21, 2013, she and a friend, Brandi Jones, were visiting the hospital and that they were "walking down a hallway when, suddenly and without warning, she slipped and fell due to water and/or liquid on the floor surface." She alleged that the "fall caused her to sustain serious and grievous personal injuries and other damages." Specifically, the plaintiff alleged injury to her knee. She initially named Christus St. Patrick Hospital as the defendant, contending that the hospital was negligent and/or strictly liable for, among other things, allowing liquid to remain on the floor surface. It also advanced liability based upon a failure to warn. She sought both general and special damages related to the alleged injury.

By amended petition, the plaintiff added Hospital Housekeeping Systems, Ltd. d/b/a Hospital Housekeeping Systems, LLC (HHS), as a defendant.[1] The plaintiff again alleged negligence and/or strict liability against the defendants asserting liability due to, among other things, the presence of a liquid on the floor, failure to warn of the danger of slipping and/or falling, and failure to post visible warning signs. By its answer to the petition, HHS denied the plaintiff's allegations and asserted that "the sole and proximate cause of the accident sued upon herein were the acts, commissions, omissions and negligence of others for whom this defendant is not answerable or responsible."

Thereafter, the plaintiff filed a motion for summary judgment and asserted that she was entitled to judgment indicating that HHS was "one hundred (100%) at fault in causing the fall made the basis of the above claim for damages." She further sought a determination that she was "free of fault[.]" In support of her motion, the plaintiff included an excerpt from her deposition, as well as one from Brandi Jones, in which both women addressed her fall. Both women identified a wet streak on the floor at the time of the incident.

The plaintiff also introduced surveillance footage from the hallway in the minutes before, during, and after the plaintiff's fall. In her memorandum in support of the motion for summary judgment, the plaintiff included still images captured from the video, and asserted that they captured HHS employee Jamon Thomas using a scrubber machine on the floor "[m]oments before [her] fall[.]" The plaintiff noted the machine's movement in the hallway prior to the fall and

---

[1] This matter appears before the court on a designated record with limited background information available for reference. *See* Uniform Rules—Courts of Appeal, Rule 2-1.17. *See also* La.Code Civ.P. art. 2128. However, HHS's brief to this court indicates that it "provided cleaning services at the hospital pursuant to a contract entered into between Christus St. Patrick Hospital and HHS."

suggested that "[i]nstead of cleaning and drying the floor as the machine makes its "S" maneuver, it left a streak of transparent water and cleaning fluid on the floor." Again referencing photographic images from the video, the plaintiff asserted that after Mr. Thomas left the scene, she and Ms. Jones entered the hallway, and that, after she stepped "forward in the area where the machine made its "S" turn," her left foot slid and she fell "hard on her right knee." Referencing her deposition testimony, the plaintiff explained that she then identified a streak of liquid on the floor and that her pant leg was wet. The plaintiff then noted that she thereafter stopped hospital personnel, showing the person that there was water on the floor and that the video images reveal Mr. Thomas returning to the area with the scrubber machine. The plaintiff also introduced the affidavit of Mr. Thomas, noting that he explained therein that he returned to the hallway and that, upon cleaning the area, he identified a narrow streak of liquid on the floor, appearing to him that the wiper of the machine failed to remove the subject liquid.

In opposition, HHS suggested that its own evidence demonstrated genuine issues of material fact regarding whether a foreign substance was on the floor, whether it had actual or constructive knowledge of that condition, or whether it created such a condition. In particular, HHS noted that in her deposition, the plaintiff explained that the streak of water ran the length of the hall. This description, HHS asserted, differed from her affidavit and from Ms. Jones's deposition, wherein she only identified drops in a line, but explained that the streak was only three to five feet long.

Turning to the video footage, HHS suggested that the video identified "a clean, clear hallway" and that it did not appear different before or after Mr. Thomas is shown passing with the scrubber machine. It further asserted that an

unidentified male shown on the video prior to the plaintiff's arrival is shown to "place[] his left foot in the exact spot in which Ms. Reider claims to have slipped on water, which occurs exactly 0:05 seconds before Ms. Reider slips." It suggests that the fall therefore could have "been caused by the shoe of the unidentified male that steps on the exact spot 0:05 seconds prior" to the fall.

Additionally, HHS argued that the videotape rendered Mr. Thomas's affidavit unreliable, insofar as he had explained therein that he discovered liquid upon his return to the scene, but the video revealed that he did not stop and inspect the area. Rather, HHS asserted that Mr. Thomas re-entered the hallway with the scrubber machine, but that the video did not evidence that the squeegee function of the machine was engaged at that time. In this regard, HHS further offered the affidavit of Sutton Francis, who explained that in his role as "PM Assistant Director at HHS" at Christus St. Patrick Hospital, he had personal knowledge of the scrubber machine operated in the surveillance video. He stated in the affidavit that, having viewed the video, it appeared "that both the front scrubber pad and the back squeegee were raised and therefore, the machine is not being used to scrub the floor" and that "[w]hen the scrubber head is up, the machine is not placing any liquid on the ground." He concluded the affidavit by opining that: "Because both the front scrubber pad and back squeegee are up when the HHS employee passes down the hall prior to Ms. Reider's incident, if there is any liquid on the floor, it neither came from nor was affected (smeared) by the Tennet T3 Floor Scrubber machine."

Finally, HHS introduced an excerpt of Mr. Thomas's deposition and asserted that it rendered his affidavit unreliable. It argued that his testimony, coupled with the surveillance video, countered the plaintiff's "insistence that she fell on a

4

foreign substance." HHS suggested instead that the video and derivative photographs revealed "no obvious substance on the floor" and that it "appears to be in the exact same condition before and after Mr. Thomas passes with the scrubber machine before the plaintiff's fall." It further referenced passages from Mr. Thomas's deposition in which he denied seeing any liquid on the floor either before or after the accident. Rather, he explained that the operator could feel the machine leaving water and that he "didn't feel it at all."

In reply,[2] the plaintiff offered a more expansive excerpt from Mr. Thomas's deposition, and suggested that his testimony and Mr. Francis's affidavit were speculative with regard to whether liquid was present on the floor. She contends that the speculation offered by HHS was inadequate to overcome her own affirmative statements regarding the presence of liquid as well as that of Ms. Jones.

Following a hearing on the motion for summary judgment, the trial court rendered judgment in favor of the plaintiff. The resulting judgment determined that HHS was "one hundred (100%) percent at fault in causing the fall made the basis of the above claim for damages[.]" The judgment further indicated that the plaintiff was "free of fault." It reserved the issues of injuries and damages for future consideration.

By subsequent judgment, the trial court denied HHS's motion for a new trial and determined that the underlying judgment constituted a final judgment "for purposes of an immediate appeal because there is no just reason for delay." *See* La.Code Civ.P. art. 1915(B)(1).

---

[2] Although the plaintiff's "Reply to Opposition of HHS, L.L.C." was not included in the designated record, the parties supplemented the record with the filing by Joint Stipulation. *See* La.Code Civ.P. art. 2128 (providing, in part, that: "a party or the trial court may cause to be filed thereafter any omitted portion of the record as a supplemental record.").

HHS appeals, assigning the following as error:

>    1)    The trial court erred as a matter of law in finding that Reider met her burden of proof on the issue of HHS's liability as she did not prove that all the elements for non-merchant liability were met.

>    2)    The trial court erred as a matter of law in granting Reider's Motion for Partial Summary Judgment, declaring that HHS is 100% liable for Reider's injuries as there are questions of fact as to HHS's knowledge of the risk.

>    3)    The trial court erred as a matter of law in denying HHS's Motion for New Trial.

## Discussion

*Louisiana Code of Civil Procedure Article 966*

Louisiana Code of Civil Procedure Article 966(A)(2)[3] indicates that "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." The Article further instructs that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

In *Suire v. Lafayette City-Parish Consol. Government*, 04-1459, p. 11 (La. 4/12/05), 907 So.2d 37, 48 (citation omitted), the supreme court explained that "[a] genuine issue exists where reasonable persons, after considering the evidence,

---

[3] While La.Code Civ.P. art. 966 was amended by 2015 La. Acts No. 422, § 1, its provisions became effective on January 1, 2016, a date after the plaintiff filed the motion for summary judgment under review. Accordingly, we consider this matter under the earlier version of Article 966. *See* 2015 La. Acts No. 422, § 2 (providing that "[t]he provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act.").

could disagree.  In considering "whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence." *Id*.  The supreme court noted that a fact is material in nature if it is one that will matter at the trial on the merits.  "Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits." *Id.*

Notably, the burden of proof in seeking summary judgment "remains with the movant."  La.Code Civ.P. art. 966(C)(2).  However, "if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense[.]" *Id.*  Instead, the moving party is required "to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.*  "Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Id.*

On appeal, a trial court's determination to grant a motion for summary judgment is reviewed de novo. *Billeaudeau v. Opelousas Gen. Hosp. Auth.*, 16-0846 (La. 10/19/16), _ So.3d _.  The appellate court uses the identical criteria that governed the trial court's consideration of whether summary judgment should be entered. *Id.*

*Motion for Summary Judgment*

Recognizing the de novo standard of review applicable here, HHS suggests that the plaintiff failed to carry her burden of proving "that there was no genuine issue of fact as to whether HHS knew or should have known of a liquid on the

7

floor when Thomas cleaned the area." HHS references the evidence presented in support of the plaintiff's motion for summary judgment and argues there was no such evidence indicating either that Mr. Thomas knew there was liquid on the floor, or that he failed to remedy such a condition. Pointedly, HHS asserts that the plaintiff presented "no evidence to show that the substance was on the floor for such a period of time that the HHS employee, by the exercise of ordinary care and diligence, must have known of its existence in general and could have guarded the public from injury."

We first point out that the parties differ on the elements that the plaintiff was required to demonstrate. Central to their dispute is whether the plaintiff was required to demonstrate actual or constructive knowledge of the existence of liquid on the floor. The plaintiff answers that question in the negative, asserting that the standard elements of the duty/risk analysis are applicable to this case, which she styles in her brief as involving "simple negligence[.]" *See* La.Civ.Code art. 2315;[4] La.Civ.Code art. 2316.[5] Thus, citing *Roberts v. Benoit*, 605 So.2d 1031 (La.1992) (on rehearing), the plaintiff suggests that her ultimate burden of proof would have required her to demonstrate that: 1) the defendant had a duty to conduct itself to a specific standard; 2) the defendant failed to do so and, therefore, breached its duty; 3) the substandard conduct was a cause-in-fact of the claimed injuries; 4) the substandard conduct was a legal cause of those injuries; and that 5) actual damages resulted. The plaintiff also asserts that, since HHS's presence at the hospital was

[4] Louisiana Civil Code Article 2315(A) provides that: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

[5] Louisiana Civil Code Article 2316 provides that: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

in its role as a contractor, it is "deemed to have constructive knowledge of the negligent act he/she commits."

Contrarily, HHS cites *Foster v. Henshaw*, 06-414 (La.App. 3 Cir. 9/27/06), 939 So.2d 625, suggesting that, as a non-merchant defendant, the plaintiff was required to show that: 1) it had custody of the property causing the purported damage; 2) the property had a condition presenting an unreasonable risk of harm; 3) the unreasonable risk of harm presented was a cause-in-fact of the purported injury; and that 4) the defendant had actual or constructive knowledge of the risk of harm.

However, and notwithstanding the plaintiff's observation that HHS appears in this case as a contractor, it is notable that the subject accident occurred in a hospital. Certainly, jurisprudence indicates that slip-and-fall claims against a hospital are not controlled by La.R.S. 9:2800.6,[6] as applicable to merchants. *See*

---

[6] Entitled "Burden of proof in claims against merchants[,]" La.R.S. 9:2800.6 provides that:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

> C. Definitions:

*Bell v. Carencro Nursing Home, Inc.*, 16-0190 (La.App. 3 Cir. 9/28/16), 202 So.3d 499, *writ denied*, 16-1918 (La. 12/16/16), _ So.3d _; *Smith v. Northshore Reg. Med. Ctr., Inc.*, 16-0628 (La.App. 1 Cir. 1/26/15), 170 So.3d 173. Rather, a panel of this circuit has recently explained that a plaintiff pursuing a slip-and-fall case against a hospital or nursing home must demonstrate that he or she sustained injury as a result of a foreign substance on the hospital premises. *Bell*, 202 So.3d 499 (relying on *Neyrey v. Touro Infirmary*, 94-78 (La.App. 4 Cir. 6/30/94), 639 So.2d 1214). Thereafter, the burden shifts to the hospital to establish that it exercised reasonable care commensurate with the circumstances involved. *Id. See also Smith*, 170 So.3d 173.

Yet, and despite HHS's argument regarding whether it had knowledge of any such condition, the plaintiff was required, in the least, to demonstrate that no genuine issues of material fact existed with regard to whether her injuries were caused as a result of a foreign substance on the hospital premises. Upon review of the parties' submissions, we conclude that she failed to do so. Undoubtedly, the plaintiff presents compelling video surveillance footage that included the events now at issue. Namely, it reveals the floor cleaning activities by Mr. Thomas and the plaintiff's subsequent fall in the hallway. Both parties note the short period of

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

time between the two occurrences in support of their respective positions.[7] Additionally, the plaintiff notes that both she and Ms. Jones provided witness testimony, via deposition and affidavit, that liquid was located on the hallway floor. Mr. Thomas also explained by affidavit that he too found liquid in the area when he returned after being informed of the fall.

Yet, in opposition, HHS provided the trial court with Mr. Thomas's deposition wherein he explained that, to the extent the scrubber machine left a "streak" of liquid on the floor, it was dry by the time he travelled two or three feet. He further denied having seen the machine's squeegee make streaks or leave wetness before the plaintiff's fall. Mr. Thomas further explained that, as the operator, he could "feel" when liquid was leaving the machine and stated that he "didn't feel it at all" at that time. Additionally, Mr. Francis stated by affidavit that, upon review of the video, it appeared that the scrubber pad and the squeegee were raised at the time it travelled through the hallway and that when the scrubber is raised, the machine does not leave liquid on the floor.

In short, and although the surveillance video could allow a trier of fact to reach certain factual findings, the video alone establishes only that Mr. Thomas maneuvered the scrubber machine through the hallway and that the plaintiff fell afterwards in the same area. It does not, alone, demonstrate that liquid was present, nor that HHS was responsible for the foreign substance's presence. Of course, the plaintiff would be required to demonstrate both of these in her claim against HHS, as the contractor. Instead, the parties attempt to interpret the video footage through the affidavits and deposition testimony offered in their respective

---

[7] The plaintiff's brief indicates that the fall occurred approximately 40 seconds after Mr. Thomas is seen passing with the scrubber machine, whereas HHS indicates that 33 seconds elapsed during that time.

submissions. But, that testimony differed, at times, as to the presence, or potential presence, of the alleged foreign substance. As such, the necessary factual conclusions are dependent upon credibility determinations, evaluations of testimony, and weighing of evidence. However, the supreme court has explained that, in determination of whether "an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence." *Suire*, 907 So.2d at 48. Furthermore, "[a]ny doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits." *Id.* at 48.

Accordingly, based on the factual conclusions apparent from the parties' submissions, we find that the trial court erred in entering summary judgment in favor of the plaintiff. We reverse that judgment below and remand for further proceedings.

## DECREE

For the foregoing reasons, the summary judgment entered in favor of the plaintiff/appellee, Ronnaesa Reider, and against the defendant/appellant, Hospital Housekeeping Systems, LLC, is reversed and this matter is remanded. Costs of this proceeding are assessed to the plaintiff/appellee.

**REVERSED AND REMANDED.**