WHIPPLE, C.J.
lain this suit for declaratory judgment regarding whether the purchases of certain prescription drugs are subject to local sales taxes, defendant, BioMedical Applications of Louisiana, LLC (“Bio-Medical”), appeals . the district court’s judgment, which: granted in part the motion for summary judgment filed by the Sheriff of Washington Parish, declaring that BioMedical was not entitled to a sales tax exclusion or a sales tax exemption for the purchases at issue and was not entitled to a refund pursuant to LSA-R.S. 47:315.3 as to sales taxes paid on those purchases during the tax period at issue; denied the motion for partial summary judgment filed by BioMedical; and dismissed Bio-Medical’s reconventional demand for declaratory judgment relief.[1]
While this appeal was pending, this court ex proprio motu issued a show cause order, ordering the parties to show cause by briefs as to whether the district court had subject matter jurisdiction over this matter.
Finding that the district court below had subject matter jurisdiction, we recall the show cause order. And, for the reasons below, we affirm.
FACTS AND PROCEDURAL HISTORY
Bio-Medical is a limited liability company doing business in Washington Parish under the name Fresenius Medical Care Franklinton, where it operates a dialysis facility. Through correspondence dated December 18, 2009, Bio-Medical submitted a Claim for Refund for Washington Parish sales taxes in the amount of $33,201.48, which it contended it had erroneously paid for the period of January 1, 2006 through *477 October 31, 2009 (“the tax period”). BioMedical contended that it regularly | ¡¡purchases and administers certain prescription drugs, including Epogen, Calci-jex, Zemplar, and Venofer, to patients suffering from End-Stage Renal Disease (“ESRD”) and that the purchases -of those drugs are exempt or excluded from local taxation to the extent that the drugs are administered to Medicare patients treated at its Franklinton dialysis facility. BioMedical ' asserted that LSA-R.S. 47:301(10)(u) provides a broad exclusion from local taxes for sales of tangible personal property made “under the provisions of Medicare” and, further, that LSA-R.S. 47:337.9(F) provides an exemption from local sales tax for prescription drugs purchased “through or pursuant to a Medicare Part B and D plan.” Accordingly, BioMedical contended that it was entitled to a refund for the sales taxes it paid on these prescription drugs administered to its Medicare patients.[2]
In response to the refund claim, the Sheriff filed the instant Petition for Declaratory Judgment, seeking a declaration that Bio-Medical was not entitled to a refund for the tax period under the provisions of LSA-R:S. 47:315.3 (which provides for . a refund of taxes on sales “paid by or under the provisions of Medicare”), LSA-R.S. 47:301(10)(u) (which, as stated above, excludes from local taxation sales of tangible personal property made “under the provisions of Medicare”), or LSA-R.S. 47:337.9(F) (which, as stated above, exempts from local sales tax prescription drugs purchased “through or pursuant to a Medicare Part B and D plan”). The'Sheriff also sought a declaration that Bio-Medical was not entitled , to a refund of taxes paid | voluntarily and not under protest under the provisions ’ of LSA-R.S. 47:337.77.[3]
After filing and then withdrawing various 'exceptions, Bio-Medical answered and reconvened against the Sheriff, seeking a judgment declaring its rights and liabilities with respect to the tax exclusions set forth in LSA-R.S. 47:301(10)(u), and LSA-R.S. 47:301(10)(a)(ii) (which excludes from taxation sales made for the purpose of resale), the refund provision contained -in LSA-R.S. 47:315.3, and the tax exemption set forth in LSA-R.S. 47:337.9(F).[4]
*478 Thereafter, the Sheriff filed a motion for summary judgment, seeking a declaratory judgment as prayed for in his petitions (as to both Bio-Medical and ABC) and, further, seeking dismissal of Bio-Medical’s (and ABC’s) reconventional demand. BioMedical (and ABC) also filed a motion for partial summary judgment, seeking a declaration that Bio-Medical’s purchases of certain prescription drugs from ABC that it administered to ESRD Medicare patients during the tax period of March 1, 2007 through | ¡^December 31, 2009, were excluded from Washington Parish sales and use taxes under LSA-R.S. 47:301(10)(u) and exempt from local sales tax under LSA-R.S. 47:337.9(F).
A hearing on the cross motions was conducted on May 2, 2013, and thereafter, the district court rendered judgment, dated September 9, 2013, as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Plaintiff GRANTING the motion for summary judgment filed by the Sheriff and DENYING the motion for partial summary judgment filed by Bio-Medical, and DECLARING that Bio-Medical is not entitled to an exclusion under La.R.S. 47:301(10)(u), nor an exemption under La.R.S. 47:337.9(F), nor a refund under La.R.S. 47:315.3 as to sales taxes that were charged by AmerisourceBergen Drug Corporation (“ABC”) to and collected from Bio-Medical and remitted to the Sheriff on sales of prescription drugs by ABC to Bio-Medical at the kidney dialysis facility operated by BioMedical in Washington Parish during the period January 1, 2006 t[h]rough October 31, 2009.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Sheriffs prayer for a declaration that Bio-Medical is not entitled to a refund under La.R.S. 47:337.77 is DENIED.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the re-conventional demand filed by Bio-Medical for refund pursuant to La.R.S. 47:315.3 is hereby DISMISSED, with prejudice.[5]
From this judgment, Bio-Medical appeals, contending that the district court erred in:
(1) Granting the Sheriffs Motion for Summary Judgment;
(2) Denying Bio-Medical’s Motion for Partial Summary | f;Judgment;[6]
(3) Declaring that the prescription drug purchases are not excluded from sales tax under LSA-R.S. 47:301(10)(u);
*479 (4) Declaring that the prescription drug purchases are not exempt from sales tax under LSA-R.S. 47:337.9(F);
(5) Disregarding the expert testimony of Dr. Hugh Long; and
(6) Failing to admit into evidence the CMS Regulations, CMS Interpretive Guidance, CMS Clinical Performance Measures, and other CMS documents submitted by Bio-Medical.
SHOW CAUSE ORDER
By show cause order dated April 4, 2016, this court directed the parties to address by briefs whether subject matter jurisdiction was appropriate in the district court below. We will address the show cause order first.
Subject matter jurisdiction is the legal power and authority of a tribunal to adjudicate a particular matter involving the legal relations of the parties and to grant the relief to which the parties are entitled. LSA-C.C.P. arts. 1 and 2. A judgment rendered by a court without subject matter jurisdiction is void. LSA-C.C.P. art. 3.
Jurisdiction over the subject matter cannot be conferred by consent of the parties. LSA-C.C.P. art. 3. It is the duty of the court to examine subject matter jurisdiction sua sponte, even when the issue is not raised by 17the litigants.[7] Whittenberg v. Whittenberg, 97-1424 (La.App. 1st Cir.4/8/98), 710 So.2d 1157, 1158.
The Louisiana Constitution provides that district courts have original jurisdiction of all civil matters except as otherwise authorized by the Constitution or except as provided by law for administrative agency determinations in workers’ compensation matters. LSA-Const. art. V, § 16(A)(1). A district court is considered to have general jurisdiction unless specifically denied it. City of Denham Springs v. Perkins, 2008-1937 (La.App. 1st Cir.3/27/09), 10 So.3d 311, 318, writ denied, 2009-0871 (La.5/13/09), 8 So.3d 568. A district court cannot be held to lack subject matter jurisdiction in the absence of constitutional authority expressly granting exclusive jurisdiction to an administrative agency or other tribunal. Michel v. State, Division of Administrative Law, 2013-1419 (La.App. 1st Cir.11/3/14), 167 So.3d 654, 658, writ denied, 2014-2539 (La.2/27/15), 159 So.3d 1069.
The Louisiana Constitution vests the power of taxation in the legislature and mandates that it provide a complete and adequate remedy for the recovery of an illegal tax paid by a taxpayer. LSA-Const. art. VII, §§ 1 and 3(A). To fulfill this obligation with regard to local sales and use taxes, |Rthe legislature provides various remedies to taxpayers, including the payment under protest procedure, *480 LSA-R.S. 47:337.63,[8] and the overpayment refund procedure, LSA-R.S. 47:337.77.[9]
Additionally, the legislature has recognized a remedy available both to taxpayers and collectors to seek uniformity of interpretation of common or local sales tax laws pursuant to LSA-R.S. 47:337.101, which provides, in pertinent part, as follows:
A. (1) Any taxpayer who has reason to believe that a collector is attempting or will attempt to collect a sales or use tax, or any penalty or interest, or any collector who has reason to believe that a taxpayer is attempting or will attempt to resist such collection, under a rule, regulation, policy, or interpretation of sales and use tax law, ordinance, rules, or regulations, the interpretation of which violates the requirement of uniformity of interpretation provided for in R.S. 47:337.2(A) and (D),[10] 337.4(C), 337.87(A),[11] and | fl337.91, may proceed as provided for in this Section. “Rule, regulation, policy, or interpretation of sales and use tax law, ordinance, rules, or regulations” means any provision of “common sales tax law” as defined in R.S. 47:337.2(C)(l)(b)[12] or a provision of law that is applicable to only local taxing authorities, any ordinance pertaining to sales and use tax, or any rule or regulation issued pursuant to R.S. 47:337.2(0) or Part H of this Chapter.
*481 (2) Such taxpayer or collector may proceed to seek uniformity of interpretation of a rule, regulation, policy or interpretation of sales and use tax laws, ordinances, rules, or regulations in accordance with any remedy available under applicable law, including the following procedures:
# * *
(b) A declaratory judgment to seek uniformity of interpretation of common sales tax law or local sales tax law in any court of competent jurisdiction.
(Emphasis added).
Thus, pursuant to LSA-R.S. 47:337.101, a local tax collector may file suit for declaratory judgment in district court to seek a uniform interpretation of a common sales tax law or a tax law applicable to local taxing authorities. In the instant case, the Sheriffs suit for declaratory judgment as to the interpretation of various tax laws, ie., LSA-R.S. 47:315.3, LSA-R.S. 47:301(10)(u), LSA-R.S. 47:337.9(F), and LSA-R.S. 47:337.77, as they apply to the factual scenario presented herein, would be encompassed under the provisions of LSA-R.S. 47:337.101. Moreover, this provision clearly demonstrates that the district courts have not been completely divested of their original jurisdiction over suits involving local tax issues, such as this declaratory judgment action.
We note that in Louisiana Department of Revenue v. KCS Holdings I, Inc., 2013-1479 (La.App. 1st Cir.3/31/14), 2014 WL 1285742, at *8 |in(unpublished), this court held that the district court lacked original jurisdiction to consider the Louisiana Department of Revenue’s suit for declaratory judgment, seeking an interpretation of a statute, because the relief sought concerned the merits of its defense to the taxpayer’s refund claim, which was pending before the Board of Tax Appeals.[13] Similarly, in Clark v. State, 2002-1936R (La.App. 1st Cir.1/28/04), 873 So.2d 32, 36, writ denied, 2004-0452 (La.4/23/04), 970 So.2d 300, this court held that the district court lacked jurisdiction over the merits of a taxpayer’s claim for refund of state sales taxes paid, which claim was also pending before the Board of Tax Appeals.
However, both KCS Holdings I, Inc. and Clark involved denial of claims for refunds of state sales taxes by the Louisiana Department of Revenue. Louisiana Revised Statute 47:1625 provides for appeals from the Department’s denial of a refund claim and vests the Board of Tax Appeals with jurisdiction over those claims. KCS Holdings I, Inc., 2014 WL 1285742 at *4. Unlike the facts in KCS Holdings I, Inc. and Clark, the matter before this court involves interpretation of statutes granting exceptions and exemptions from local sales taxes. Louisiana Revised Statute 47:337.101, in recognizing the parties’ right to seek declaratory judgment in district court, clearly evidences that in enacting the Uniform Local Sales Tax Code, as in effect at the time of the *482 proceedings in the district court below, the legislature did not intend, under its broad, | n constitutionally granted power of taxation, to deny general jurisdiction to district courts in the interpretation of sales tax laws applicable to local taxing authorities.[14] Thus, we conclude that, at all times during the proceedings in the district court below, the district court had subject matter jurisdiction over this matter. Because we conclude that the district court had subject matter jurisdiction herein, we recall the show cause order.
EVIDENTIARY RULINGS
District Court’s Decision to Disregard Expert Testimony (Assignment of Error No. 5)
In this assignment of error, BioMedical contends that the district court erred in disregarding the expert testimony of its expert, Dr. Hugh Long, a professor at the Tulane School of Public Health and Tropical Medicine and former commissioner on the Medicare Payment Advisory Commission (“MedPAC”). The district court disregarded the expert opinions of Dr. Long and the Sheriffs expert “as to them respective interpretations of the relevant Louisiana statutes,” noting that the interpretation of a statute is a question of law and that accordingly, these opinions would “not assist the [cjourt.”
112A district court is accorded broad discretion in determining whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert. Cheairs v. State ex rel. Department of Transportation and Development, 2003-0680 (La.12/3/03), 861 So.2d 536, 540-541. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. LSA-C.E. art. 702(1). The testimony of an expert, with the attendant right to express opinions and conclusions, is proper for the purpose of assisting the court only in those fields in which the court lacks sufficient knowledge to enable it to come to a proper conclusion without such assistance. Wilson v. Wilson, 542 So.2d 568, 573 (La.App. 1st Cir. 1989). It is well established that expert witnesses may not provide opinions regarding domestic law, as distinguished from foreign law, on the theory that the court itself is the expert on domestic law. UTELCOM, Inc. v. Bridges, 2010-0654 *483 (La.App. 1st Cir.9/12/11), 77 So.3d 39, 54, writ denied, 2011-2632 (La.3/2/12), 83 So.3d 1046; Wilson, 542 So.2d at 573.
In the instant case, there are no factual disputes. Rather, the issue is the proper statutory interpretation of the applicable sales tax exemption and exclusion statutes. Statutory interpretation is a question of law. Clements v. Folse ex rel. Succession of Clements, 2001-1970 (La.App. 1st Cir.8/14/02), 830 So.2d 307, 311, writ denied, 2002-2328 (La.11/15/02), 829 So.2d 437. The district court itself is an expert on domestic law, including matters of statutory interpretation. Accordingly, the opinion of Dr. Long as to his interpretation of the applicable Louisiana statutes would not assist the | ^district court, and, thus, we find that the district court did not err in disregarding this portion of his testimony.
District Court’s Refusal to Admit into Evidence CMS Regulations, Interpretive Guidance, Clinical Performance Measures and Other CMS Documents (Assignment of Error No. 6)
In this assignment of error, BioMedical contends that the district court erred in failing to admit into evidence copies of the regulations, interpretative guidance, clinical performance measures (“CPMs”), and other documents promulgated by the Centers for Medicare and Medicaid Services (“CMS”), an agency of the United States Department of Health and Human Services that manages the Medicare program. The record reflects that copies of these regulations, interpretative guidance, and other CMS documents were submitted to the trial court. However, counsel for the Sheriff objected to admitting these documents as “evidence,” arguing that the documents set forth “law” of which the court could take judicial notice, and thus, that there was no need to introduce these documents as “evidence.” The district court agreed that these regulations and CMS interpretive guidance are “not evidence” and allowed Bio-Medical to proffer copies of the regulations and interpretative guidelines instead.
Louisiana Code of Evidence article 202(B)(1)(e) provides, in pertinent part, that a court shall take judicial notice of rules and decisions of boards, commissions, and agencies of the United States that have been duly published and promulgated and that have the effect of law within their respective jurisdictions. Applying this precept, the crucial issue herein is whether the CMS regulations, interpretative guidance, CPMs, and other submitted documents “have the effect of law” and are, therefore, the types of rules of which the court can take judicial notice. The United States Supreme Court recently addressed this issue in Perez v. Mortgage Bankers Association, — U.S. -, 135 S.Ct. 1199, 1203-1204, 191 L.Ed.2d 186 (2015), wherein the Court found that interpretive rules are exempt from formal notice-and-comment requirements of the Administrative Procedures Act, 5 U.S.C. § 553(b)(A), and therefore, interpretative rules do not have the force and effect of law and are not accorded that weight in the adjudicatory process.
Accordingly, in the instant case, we find that judicial notice can be taken of the CMS regulations that are published in the Code of Federal Regulations and have the force and effect of law. However, the district court erred in excluding from evidence the interpretative guidance and other proffered documents that do not have the force of law on the basis that the court could take judicial notice of these publications.
Nonetheless, there is nothing in the record establishing that the district court did not consider the regulations, interpretative *484 guidance, and other CMS publications in reaching its decision. Rather, the only-issue is whether it was necessary to introduce these documents into evidence or whether judicial notice could be taken of them. Accordingly, while the district court may have erred in excluding the interpretative guidance and other CMS documents as “evidence” on the basis that judicial notice could be taken thereof, we find that this ruling did not have a substantial effect on the outcome of the case, as these guidelines were nonetheless considered by the district court and will be considered by this court on our de novo review.[15]
I ^SUMMARY JUDGMENT
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B) (prior to amendment by 2015 La. Acts 422, § l.[16] The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Smith v. Northshore Regional Medical Center, Inc., 2014-0628 (La.App. 1st Cir.1/26/15), 170 So.3d 173, 176. The interpretation of a statute is a question of law that may be decided by summary judgment. M & M Financial Services, Inc. v. Hayes, 2014-1690 (La.App. 1st Cir.6/5/15), 174 So.3d 1172, 1174.

Medicare and Its Reimbursement for Dialysis Services Rendered to ESRD Patients

The evidence submitted by the parties on these cross-motions for summary judgment establishes the general background of Medicare and its coverage of dialysis services for ESRD patients. The Medicare program includes two related health programs, Medicare Part A and Medicare Part B. Medicare Part A generally applies to in-patient hospital care (acute care) and 11fipost-acute care, such as skilled nursing and home health services. Medicare Part B generally applies to medically necessary doctor services, delivered either on an in-patient or an out-patient basis, as well as other outpatient care.[17] Medicare Part B provides coverage for institutional dialysis services and supplies, if they are *485 furnished in an approved ESRD facility. This coverage extends to all services, items, supplies, and equipment necessary to perform dialysis, as well as drugs medically necessary for the treatment of an ESRD patient, routine dialysis monitoring tests, routine diagnostic tests, and “Epoe-tin (EPO)”[18] and its administration.[19] 42 C.F.R. § 410.50.
In order for a dialysis clinic to qualify and participate as a Medicare provider, the clinic must meet all Medicare regulations and various conditions for coverage (“CfCs”). See 42 C.F.R. §§ 494.1— 494.180. Through these CfCs, CMS heavily regulates Medicare-certified dialysis clinics in terms of quality and outcomes.
Notably, the CfCs do not dictate which prescription drugs a dialysis clinic must purchase or administer. Rather, that determination is made by |17the attending physician. Also, the Medicare CfCs do not dictate from whom a dialysis clinic must purchase drugs, the price the clinic pays for drugs, the frequency of drug purchases, or whether a dialysis clinic pays sales tax on the purchase of those drugs.[20] Moreover, Medicare does not pay the drug supplier for the purchase of drugs under Medicare Part B.

Bio-Medical’s Operations and Purchases of Prescription Drugs

Bio-Medical’s Franklinton dialysis clinic is a Medicare-certified dialysis clinic. In addition to providing dialysis services for Medicare patients, Bio-Medical also treats patients who are not covered by Medicare. Each patient receiving dialysis treatments at Bio-Medical’s clinic has specific dialysis orders from the patient’s attending ne-phrologist, and the staff of the clinic must treat the patient pursuant to the physician’s orders.
Orders for prescription drugs to treat its patients are submitted at the clinic level by Bio-Medical personnel, usually on a weekly basis, and Bio-Medical, not Medicare, bears the responsibility for and actually pays its vendor, ABC, for the drugs. The amount of drugs ordered by Bio-Medical is dependent upon the number of patients it is treating and the standing orders of the treating nephrologists. These orders include drugs needed to treat its entire patient population at a particular clinic, including Medicare patients and non-Medicare patients. Drugs administered to Medicare patients are not purchased or stored separately from the drugs adminis *486 tered to non-Medicare patients. In fact, both Medicare and non-Medicare patients may be administered medication from the same vial of a particular drug purchased by Bio-Medical from its vendor, ABC.
| Applicability of Sales Tax Exclusion in LSA-R.S. 47:301(10) (u) (Assignments of Error Nos. 1, 2, and 3)
Through these assignments of error, Bio-Medical contends that the district court erred in concluding that its purchase of prescription drugs that are administered to Medicare patients receiving dialysis treatment in its Franklinton clinic are not excluded from local sales tax pursuant to LSA-R.S. 47:301(10)(u), where these prescription drug purchases are “instructed and required by, made pursuant to, and meet the mandatory regulatory requirements of the Medicare statutes, regulations, rules and guidelines.” Bio-Medical argues that the exclusion from local sales and use tax of sales of personal tangible property made “under the provisions of Medicare” should be interpreted to include all sales of personal property “subject to the guidance, instruction, or authority of the rules and statutes of Medicare.” According to Bio-Medical, it purchases the ESRD-related prescription drugs and administers them to its Medicare patients in order to meet the strict patient-care requirements of Medicare. Thus, Bio-Medical argues, these prescription drug purchases are clearly made “under the provisions of Medicare.”
As noted by the district court herein, there are no state sales and use taxes collected on drugs prescribed by a physician. LSA-R.S. 47:305(D)(1)(J). However, there is no corresponding comprehensive exclusion or exemption applicable to local sales and use taxes. See LSA-Const. art. VI, § 29(A) (authorizing the governing authority of any local governmental subdivision to levy and collect a tax upon the sale at retail of tangible personal property[21] if approved by a majority of the electors) and |iaLSA-R.S. 47:337.11.1 (requiring a pharmacy or pharmacist to collect any sales and use tax levied by a local political subdivision on the sale of prescription drugs and pharmacist services and to remit such taxes to the levying authority).
Nonetheless, there is a limited exclusion from local sales and use taxes created by LSA-R.S. 47:301(10)(u).[22] Specifically, in defining “sale at retail” for purposes of sales and use taxes imposed by local political subdivisions, the legislature excluded the sale of certain tangible personal property as follows:
*487 For purposes of sales and use taxes levied and imposed by-local governmental subdivisions, school boards, and other political subdivisions whose boundaries are not coterminous with those of the state, “sale at retail” by a person shall not mean or include the sale of tangible personal property if such sale is made under the provisions of Medicare,
(Emphasis added).
Tax exemptions are strictly construed in favor of the taxing authority, whereas tax exclusions are construed liberally in favor of the taxpayers and against the taxing authority. Harrah’s Bossier City Investment Company, LLC v. Bridges, 2009-1916 (La.5/11/10), 41 So.3d 438, 446. Because LSA-R.S. 47:301(10)(u) is a tax exclusion, it is to be liberally construed in favor of the |2qtaxpayers and against the taxing authority. Harrah’s Bossier City Investment Company, LLC, 41 So.3d at 446.
The dispute herein focuses on the meaning of the language of LSA-R.S. 47:301(10)(u) excluding from the definition of “sale at retail” the sale of tangible personal property “if such sale is made under the provisions of Medicare.” The paramount consideration in statutory construction is the ascertainment of legislative intent and the reason or reasons that prompted the legislature to enact the law. Foti v. Holliday, 2009-0093 (La.10/30/09), 27 So.3d 813, 817. Thé starting point for the interpretation of a statute is the language of the statute itself. When a statute is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. LSA-R.S. 1:4; Cat’s Meow, Inc. v. City of New Orleans through Department of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186, 1198.
However, when a statute is not clear and unambiguous, or its application leads to absurd consequences, we rely on secondary rules of statutory interpretation to discern the meaning of the statute at issue. In such, cases, the statute must be interpreted to have the meaning that best conforms to the purpose of the law. Pierce Foundations, Inc. v. Jaroy Construction, Inc., 2015-0785 (La.5/3/16), 190 So.3d 298, 302. In many cases, in resolving an ambiguity, the legislative history of an act and contemporaneous circumstances may be helpful guides in ascertaining legislative intent. Exxon Pipeline Company v. Louisiana Public Service Commission, 98-1737, 98-1738 (La.3/2/99), 728 So.2d 855, 860. When analyzing legislative history, it is presumed that the legislature’s actions in crafting a law were knowing and intentional. Foti, 27 So.3d at 817.
|aiAs set forth above, the Sheriff in his motion for summary judgment sought a declaration that Bio-Medical was not entitled to a refund of local sales taxes it had paid on prescription drugs under the provisions of LSA-R.S. 47:315.3, LSA-R.S. 47:301(10)(u), or LSA-R.S. 47:337.9(F). In rendering judgment granting in part the Sheriffs motion, the district court specifically found that Bio-Medical was not entitled to a refund of local sales taxes it had paid on prescription drugs under the provisions of LSA-R.S. 47:315.3, an exclusion from local sales taxes under LSA-R.S. 47:301(10)(u), or an exemption from local sales taxes under LSA-R.S. 47:337.9(F).
Notably, the district court found that the language of LSA-R.S. 47:315.3 was clear and unambiguous in limiting its application to transactions involving ■ direct payment by Medicare or transactions involving Medicare patients, and Bio-Medical has not challenged .the district court’s finding that it was not entitled to a refund of taxes paid under the provisions of LSA-R.S. *488 47:315.3. Moreover, in concluding that Bio-Medical likewise was not entitled to an exclusion from local sales taxes under LSA-R.S. 47:301(10)(u) (at issue in these assignments of error), the distinct court, upon determining that the language of the statute was ambiguous, found the legislative history of this statute and the interplay between this tax exclusion provision and the tax refund provision contained in LSA-R.S. 47:315.3 to be instructive, as set forth in the district court’s reasons for judgment, as follows:
Effective, July 5, 2000, La. R.S. 47:315.3(A) was amended by Act 22 of the 2000 Second Extraordinary Session to provide:
(A) Any person who has paid sales and use taxes, levied by the state and any other taxing authorities in the state, upon the sale, lease, oriental of tangible personal property when such sale, lease, or rental is paid by or under the provisions of Medicare, shall be entitled to reimbursement of the amount of tax paid on such property. Upon receipt of a signed statement of such person as to the amount of taxes paid under the provisions of this Chapter on such tangible personal property and upon proof of payment by or under the provisions of Medicare, the secretary and the appropriate taxing authorities shall make a refund to such person in the amount to which he is entitled. (Emphasis added)
This bill was sponsored by Representative Johns as House Bill 27. The prior version of Section (A) was applicable to Louisiana sales and use taxes only. Therefore, this amendment broadened the statute to include local sales and use taxes as well. The Court finds that the language of this statute is clear and unambiguous requiring payment (and proof thereof) by Medicare or payment (and proof thereof) under the provisions of Medicare thus limiting its provisions to transactions involving direct payment by Medicare or transactions involving Medicare patients.
Thereafter, in the 2001 Regular Session Representative Johns introduced House Bill 730, Act 60 which became effective July 1, 2001. This Act created La. R.S. 47:301(10)(t) [Subsequently re-designated as 10(u) by the Louisiana State Law Institute ] which provides as follows:
(t) For purposes of sales and use taxes levied and imposed by local governmental subdivisions, school boards, and other political subdivisions whose boundaries are not coterminous with those of the state, “sale at retail” by a person shall not mean or include the sale of tangible personal property if such sale is made under the provisions of Medicare, (Emphasis added)
⅜ ⅜ ¾*
Taxpayers first contend that the language of this statute is clear and unambiguous arguing that any sale made under the provisions of Medicare which the Taxpayers define as “instructed or required by the Medicare statute or rules” is excluded from sales tax. The Taxpayers further contend that the legislative history prior to the enactment of La. R.S. 47:301(10)(u) supports its position. Taxpayers argue that Act 60, now codified in Section 301(10)(u) does not limit its provisions to transactions involving Medicare patients or require direct payment by Medicare as it removed the language “paid by” as contained in La. R.S. 47:315.3 effectively broadening the scope of the exclusion. This Court disagrees.
| asDue to the ambiguity created by the differences in the language of the two *489 acts, this Court has consulted the archived video recordings of the House Ways and Means Committee meeting of April, 3, 2001 wherein House Bill 730 (subsequently enacted as 2001 La. Acts. No. 60) was debated. During his presentation to the Committee Representative Jones stated:
... This is the same exact issue that I brought to this committee last year— and in recapping very briefly — when there is a sale, a lease, or a rental made under the provisions of the Medicare laws the provider of that service — , number one — , cannot charge sales tax to Medicare. Medicare refuses to pay the sales tax on that — particular transaction. Medicare also prevents the provider from collecting that tax from the recipient. So, in turn, what was happening before I passed my legislation last year was that in certain parishes around the state the — provider of these services was having to pay the taxes out of his pocket. — The state taxes were already — not being collected, — actually were being reimbursed or rebated by — the state sales tax division. And what we did was we, we crafted legislation that said those taxes, the local taxes, could either be reimbursed — or rebated back. In December of this year, I was invited to the — state association of tax collectors up in Shreveport and spoke on the intent of our legislation and was informed at that time that, that what we had done last year may be somewhat confusing to some entities and they suggested that in order to — have some continuity across the state — from parish to parish that we just do a straight tax exemption of, of this.
After a discussion by Representative Johns concerning the lack of fiscal impact of the bill, he described the bill to the committee as “more of a housekeeping measure.”
This discussion not only provided the Court insight as to the intent of this legislation but also provided a historical perspective as to the enactment of La, R.S. [47:]315.1(A) as both statutes were sponsored by Representative Johns.
Based upon the Court’s examination of the aforementioned legislative source, the Court concludes there was no intention to broaden the applicability of the exclusion to include third-party transactions as in this case.
|24We likewise find the language “sale ... made under the provisions of Medicare” to be ambiguous and find the above legislative history to be instructive. Moreover, even construing the statute liberally in favor of the taxpayer, we conclude that reading this provision to apply to the third-party sales of prescription medication at issue herein would require a strained interpretation that is unsupported by the record before us. As detailed above, Medicare is not a party to these transactions, which are structured such that these sales are not paid by Medicare; the particular drugs purchased, the price negotiated, the vendor used, and the payment of sales tax thereon are not controlled or governed “under the provisions of Medicare”; and only a portion of the drugs purchased in these sales are ultimately administered to Medicare patients and thereafter potentially reimbursed as part of the delivery of dialysis services to a Medicare patient.[23] Thus, we can find no *490 reasonable interpretation of this statute that would include the sales at issue as “sale[s] ... made under the provisions of Medicare.”
Accordingly, we agree with the district court that Bio-Medical is not entitled to a sales tax exclusion under the provisions of LSA-R.S. 47:301(10)(u) for the sales of prescription drugs by ABC to Bio-Medical for |2Suse in its Franklinton dialysis facility during the tax period at issue.
Applicability of Sales Tax Exemption in LSA-R.S. 47:337.9(F) (Assignments of Error Nos. 1, 2, and 4)
Finally, Bio-Medical contends that the district court erred in declaring that it was not entitled to a sales tax exemption under the provisions of LSA-R.S. 47:337.9(F), which provides as follows:
Notwithstanding any provision of law to the contrary, prescription drugs purchased through or pursuant to a Medicare Part B and D plan shall be exempt from the sales and use taxes imposed by any local governmental subdivision, school board, or other political subdivision whose boundaries are not coterminous with the state.
(Emphasis added). Bio-Medical argues, as it did in its argument under LSA-R.S. 47:301(10)(u), that the prescription drug purchases at issue were transactions “made pursuant to Medicare Part B” and that the district court erred in interpreting this language in an overly restrictive manner,
As a sales tax exemption, LSA-R.S. 47:337.9(F) must be strictly construed against the taxpayer and “must be unequivocally and affirmatively established.” See Willis-Knighton Medical Center v. Caddo-Shreveport Sales and Use Tax Commission, 2004-0473 (La.4/1/05), 903 So.2d 1071, 1094.
In concluding that LSA-R.S. 47:337.9(F) did not apply to exempt the sales at issue from local sales tax, the district court found that the wording of the statute was clear and unambiguous in that the drugs cannot be deemed to have been “purchased through or pursuant to a Medicare Part B and D plan” when no Plan participant is a party to the sale.
We likewise find that the language of the statute is clear in that it grants an exemption from local sales tax only as to prescription drag purchases purchased through or pursuant to “a Medicare Part B and D plan.” This clear language, which must be interpreted strictly against the 12(itaxpayer, supports the reading of the statute as not applying to bulk drug sales between a dialysis clinic and pharmaceutical vendor (sales in which the provisions of Medicare play no part in determining which drugs are purchased, which vendor is used, what price is paid, or whether sales tax is charged) to supply the entire population of the clinic’s ESRD dialysis patients, including both Medicare and non-Medicare patients. Given that these drugs undisputedly are purchased for administration to all patients of the Franklinton clinic and that the purchases are not made through any Medicare Part B or D plan and are not paid by Medicare, we likewise agree with the district court that BioMedical is not entitled to a sales tax exemption pursuant to LSA-R.S. *491 47:337.9(F).[24] These assignments of error are also without merit.[25]
CONCLUSION
For the above and foregoing reasons, the April 4, 2016 show cause order issued by this court is recalled. The September 9, 2013 judgment of the district court that granted in part the Washington Parish Sheriffs motion |27for summary judgment, declaring that Bio-Medical Applications of Louisiana, LLC, was not entitled to a sales tax exclusion under LSA-R.S. 47:301(10)(u), a sales tax exemption under LSA-R.S. 47:337.9(F), or a sales tax refund under LSA-R.S. 47:315.3 for the drug purchases at issue herein, and dismissed Bio-Medical’s reconventional demand with prejudice, is hereby affirmed. Costs of this appeal are assessed against Bio-Medical Applications of Louisiana, LLC.
SHOW CAUSE ORDER RECALLED; AFFIRMED.
WELCH, J., agrees and will concur and assign reasons.
DRAKE, dissents and assigns written reasons.

. The judgment further denied the Sheriff's request for a declaration that Bio-Medical was not entitled to a refund of taxes under LSA-R.S; 47:337.77.

. To establish the value o£ its refund claim, Bio-Medical calculated the. percentage of dialysis treatments rendered to Medicare patients during the tax period at issue (by dividing the number of dialysis treatments rendered to Medicare patients by the total number of dialysis treatments) and sought a refund of taxes on the sale of prescription drugs in the same percentage.

.. Bio-Medical purchased these prescription drugs from AmerisourceBergen Drug Corporation (“ABC”), which collected the sales taxes on the transactions and remitted the taxes to the Sheriff of Washington Parish. ABC also filed a Claim for Refund of Taxes Paid, although for a different tax period, seeking a refund of taxes on behalf of its customer, BioMedical, on the same bases as those asserted by Bio-Medical in its refund claim. In response, the Sheriff likewise filed a Petition for Declaratory Judgment, naming ABC as defendant. The Sheriff’s two suits for declaratory judgment were consolidated in the district court below, and the cross motions for summary judgment involved all three parties, the Sheriff, Bio-Medical, and ABC. Nonetheless, the district court ultimately rendered two separate judgments, one as to the claims between the Sheriff and Bio-Medical and the other as - to the claims between the Sheriff and ABC.
ABC has appealed the judgment in these consolidated matters that relates to the claims between it and the Sheriff. Our decision in that related-appeal, Crowe v. BioMedical Application of Louisiana, LLC, 2014 CA 0919 consolidated with Crowe v. AmerisourceBergen Drug Corporation, 2014 CA 0920, also pending .before this panel, is likewise handed down this date.

. In its answer and reconventional demand, Bio-Medical avérred that it had filed an amended Claim for Refund dated March 12, *478 2010, for a refund of taxes paid for the tax period beginning March 1, 2007 through December 31, 2009, and sought declaratory judgment only as to that tax period.

. The district court certified the judgment as final for purposes of immediate appeal, pursuant to LSA-C.C.P. art. 1915(B), upon the express finding that the final disposition of this proceeding was important to the public fisc of Washington Parish and that there was no just reason for delay. On review, we conclude that this certification was proper. See R.J. Messinger, Inc. v. Rosenblum, 2004-1664 (La.3/2/05), 894 So.2d 1113, 1122-1123.

. The denial of a motion for summary judgment is an interlocutory judgment and is ap-pealable only when expressly provided by law. However, where there are cross-motions for summary judgment raising the same issues, this court will review the denial of a summary judgment in addressing the appeal of the granting of the cross-motion for summary judgment. See MP31 Investments, LLC v. Harvest Operating, LLC, 2015-0766 (La. App. 1st Cir. 1/22/16), 186 So.3d 750, 755, and Board of Supervisors of Louisiana State University v. Louisiana Agricultural Finance Authority, 2007-0107 (La.App. 1st Cir.2/8/08), 984 So.2d 72, 78 n. 1.

. Notably, in the district court below, BioMedical filed various exceptions to the Sheriff's petition, including a declinatory exception raising the objection of lack of subject matter jurisdiction, but Bio-Medical later moved to recall its exceptions, contending that "[a]s part of a larger agreement with Plaintiff, Defendants have agreed to withdraw their [exceptions in the above captioned consolidated matters in the interest of judicial economy, and to reach the merits of the core legal issues [in] this case in an expeditious manner.” While the motion to withdraw the exceptions was granted by the district court, Bio-Medical later contended in its memorandum in support of its motion for partial summary judgment that "Defendants and Petitioner have agreed to hold all procedural issues in this matter in abeyance so that the Core Legal Issue can be addressed and ruled upon by the Court.”
When questioned about this statement at oral argument in this matter, counsel for BioMedical represented that Bio-Medical had in fact waived the exceptions it had filed.

. Importantly, at all times relevant to BioMedical's and the Sheriff's dispute as to tire sales taxes at issue herein, including at the time of rendition of judgment by the district court below, LSA-R.S, 47:337.63 provided that a suit to recover taxes paid under protest was proper in state court. LSA-R.S. 47:337.63 (prior to amendment by 2014 La. Acts 640, § 2, effective June 12, 2014, and 2015 La. Acts 210, § 1, effective June 23, 2015). Not until amendment by 2014 La. Acts 640, § 2, effective June 12, 2014, after judgment in this matter was rendered and this appeal granted, did the legislature amend LSA-R.S. 47:337.63(B) to extend the jurisdiction of the Board of Tax Appeals to encompass a taxpayer’s claim for recovery of local sales taxes paid under protest.

. Similarly, at the time the claim for refund at issue was filed and subsequently disallowed herein, LSA-R.S. 47:337,81 provided that the taxpayer could appeal the denial of a claim for refund to a court of competent jurisdiction. LSA-R.S. 47:337.81(A)(2) (prior to amendment by 2014 La. Acts 640, § 2, and 2015 La. Acts 210, § 1, both effective as to paragraph (A)(2) on June 12, 2014). Not until amendment by 2014 La. Acts 640, § 2, effective June 12, 2014, after judgment in this matter was rendered and this appeal granted, did the legislature amend LSA-R.S. 47:337.81(A)(2) to extend the jurisdiction of the Board of Tax Appeals to encompass a taxpayer’s appeal of the denial of a claim for refund of local sales taxes.

10. Louisiana Revised Statute 47:337,2 sets forth the intent of the Uniform Local Sales Tax Code, LSA-R.S. 47:337.1, ef seq. Paragraph (A) of LSA-R.S. 47:337.2 provides that the intention of the legislature in enacting the Uniform Local Sales Tax Code is in part to "benefit both taxpayers and local tax collectors by promoting uniformity to the extent possible in the assessment, collection, administration, and enforcement of the sales and use taxes imposed by taxing authorities and, by compiling them, making them readily available in one place in the revised statutes.” LSA-R.S. 47:337.2(A)(1)(b).

11. Louisiana Revised Statute 47:337.87(A) similarly provides that "[t]he purpose of this code is to benefit both taxpayers and local tax collectors by promoting uniformity in the assessment, collection, administration, and enforcement of state and local sales and use tax and by compiling them, and making them readily available in one place in the revised statutes.”

12. "Common sales tax law” is defined as "a provision of law relative to the sales and use tax law of the state which is applicable to the state and to local taxing authorities and which is intended to have the same meaning and application as provided for in R.S, 47:337(D).” LSA-R.S. 47:337.2(C)(l)(b).

. In so ruling, this court stated that the "Department is simply attempting to litigate the merits of [the taxpayer’s] claim in district court, as a court of original jurisdiction, rather than before the Board of Tax Appeals, which is the proper body vested with exclusive original jurisdiction over the claim,” and noted that "our courts have consistently rejected 'semantic endeavors’ by parties who attempt to circumvent an administrative agency’s original jurisdiction by filing a petition in district court.” KCS Holdings, I, Inc., 2014 WL 1285742 at *8-9 (quoting Daily Advertiser v. Trans-La, a Division of Atmos Energy Corporation, 612 So.2d 7, 27 (La. 1993)). In the instant case, there can be no such claim of "semantic endeavors” given that at all pertinent times below, the Board of Tax Appeals simply did not have jurisdiction over these matters.

. Notably, the parties have represented that after the Sheriff filed the instant suit for declaratory judgment, he disallowed the refund claim, and Bio-Medical and ABC appealed that ruling to the district court, as then provided by LSA-R.S. 47:337.81(A)(2) (prior to amendment by 2014 La. Acts 640, § 2). According to the parties, that suit has been stayed pending the outcome of this matter. Moreover, the parties further represent that Bio-Medical thereafter began to pay local sales taxes on these prescription drugs under protest and that the proceedings relating to those taxes paid under protest have likewise been stayed in the district court. Thus, the issue of whether these drug purchases are exempt or excluded from local sales-taxes has not been finally resolved and remains a justi-ciable issue.
Similar refund claims have been filed in approximately forty parishes in the state. Apparently, the parties to many of these suits, including the Sheriff of Washington Parish, Bio-Medical and ABC, have signed an “Agreement to Abide,” which is not of record, but through which, according to the parties herein, they have agreed that the substantive .decision in this case will control the refund claims and requests for refund of payments under protest, subject to exceptions and other procedural defenses filed in those suits, in all of the parishes where the parties are signatories to the Agreement to Abide, including the parties to this case.

, We note that the only objection made to these publications was that the district court should take judicial notice of them rather than having these documents as “evidence” in the record. Given that we find no merit to the only challenge to this evidence raised by the Sheriff, this court will consider this evidence in our de novo review of the cross-motions for summary judgment herein.

. The judgment in this matter was signed on September 9, 2013. Thus, it is governed by the version of LSA-C.C.P. art. 966(B) as amended by 2013 La. Acts 391, effective August 1, 2013. See Smith, 170 So.3d 173, 176 n. 3. The 2014 Act amending article 966 did not amend this section of the article, see 2014 La. Acts 187, and the 2015 Act amending article 966 specifically provides that its provisions shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act. See 2015 La, Acts 422, effective January 1, 2016.

.Another component of Medicare is Medicare Part D, which provides prescription drug cpyerage for pharmaceuticals that are-purchased at a pharmacy and are self-administered.

. EPO is the leading prescription drug used to combat anemia in ESRD patients.

. Historically, Medicare reimbursed based on reasonable charges for the actual goods and services provided. However, Medicare began reimbursing for dialysis treatment services on a bundled billing procedure, where a composite rate is paid for the dialysis services, which includes the administration of certain drugs. Thus, a bill for services is not submitted to Medicare. Rather, a current procedure technology (CPT) code is submitted to CMS for the services provided, and Medicare reimburses a fixed amount based on the particular CPT code. The same rate is reimbursed through Medicare for a particular CPT code, regardless of any differences in various providers’ costs in administering the services. Moreover, as long as the various drags administered to different patients, are included in the bundled payment, Medicare pays the same fee for different patients irrespective of the particular drugs each patient is prescribed and administered. In 2011, the Medicare reimbursement scheme was changed to expand the items included within the bundled billing procedure, as well as to include a pay-for-performance incentive system.

.Indeed, Dr. Robert I. Kenney, the interim medical director for Bio-Medical, testified with regard to Medicare’s interest in what a provider pays its vendors as follows: "They want to be out of that business. They basically just want to pay for a service, have it delivered. They care not that much what the cost is in terms of supplies or whatever.”

. “Tangible personal property” is defined, subject to various exclusions, as "personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses.” LSA-R.S. 47:301(16).

. A tax exemption is a provision that exempts from tax a transaction that would, in the absence of the exemption, otherwise be subject to tax. That is, there has been a statutory decision not to tax a certain transaction that is clearly within the ambit and authority of the taxing statutes to tax. An exclusion, on the other hand, relates to a transaction that is not taxable because it falls outside the scope of the statute giving rise to the tax ab initio. Transactions excluded from the tax are those which, by the language of the statutes, are defined as beyond the reach of the tax. Harrah’s Bossier City Investment Company, LLC v. Bridges, 2009-1916 (La.5/11/10), 41 So.3d 438, 446 (quoting Bruce J. Oreck, Louisiana Sales & Use Taxation (2d ed. 1996), § 3.1).
Because LSA-R.S. 47;301(10)(u) expressly defines a category of transactions that are not included within the definition of “sale at retail,” it is clearly a tax exclusion. See generally Odebrecht Constmction, Inc. v. Louisiana Department of Revenue, 2015-0013 (La.App. 1st Cir.9/18/15), 182 So.3d 132, 142-143, writ denied, 2015-2113 (La.1/15/16), 184 So.3d 708.

. Additionally, we note that while Bio-Medical sought to establish the value of its refund claim by dividing the number of dialysis treat-mente rendered to Medicare patients by the total number of dialysis treatments and by seeking a refund of taxes on the sale of pre *490 scription drugs in the same percentage, such a calculation presupposes that all patients are administered the same medicines in the same doses, which is clearly not borne out by the record. This fact further amplifies the fallacy in straining the interpretation of the statute at issue to conclude that these sales transactions between Bio-Medical and ABC, for drugs to be administered to Bio-Medical’s entire ESRD patient population, were sales "made under the provisions of Medicare.”

. We further note that because the district court found the wording of the statute to be clear and unambiguous, it should not have resorted to a review of legislative history to ascertain the intent of the statute. See LSA-R.S. 1:4.

. We note that in its motion for partial summary judgment, Bio-Medical only sought judgment declaring that it was entitled to a refund of taxes paid pursuant to LSA-R.S. 47:301(10)(u) and LSA-R.S. 47:337.9(F), and, it specifically contended that it was reserving its rights to assert the applicability of exclusion from sales taxes provided in LSA-R.S. 47:301 (10)(a)(ii), as to a "sale for resale,” and of the sales tax reimbursement provision in LSA-R.S. 47:315.3. However, in addition to seeking a declaration that BioMedical was not entitled to a refund of sales taxes paid under LSA-R.S. 47:315.3, as discussed at length above, the Sheriff, in his motion for summary judgment, also sought dismissal of Bio-Medical’s reconventional demand in its entirety. And in his memorandum in support of the motion for summary judgment, the Sheriff argued that the sales of drugs from ABC to Bio-Medical were "sales at retail,” not "sales for resale.”
In ruling on the cross-motions for summary judgment, the district court dismissed BioMedical’s reconventional demand in its entirety, and Bio-Medical has not appealed the dismissal of the portion of its reconventional demand seeking a declaration that it was entitled to a refund of taxes paid on the basis that these sales were "sales for resale” pursuant to 47:301 (10)(a)(ii),