# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-775

**BEVERLY JAMES, ET VIR**

**VERSUS**

**CHRISTUS HEALTH CENTRAL LOUISIANA**

************
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 261,107
HONORABLE PATRICIA KOCH, DISTRICT JUDGE

************
## SYLVIA R. COOKS
## JUDGE
************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, John E. Conery, Van H. Kyzar and Candyce G. Perret, Judges.

**REVERSED AND RENDERED.**

**Conery, J., dissents and assigns reasons.**

Edmond H. Knoll
The Knoll Law Firm, LLC
P.O. Box 426
Marksville, LA 71351
(318) 253-6200
COUNSEL FOR PLAINTIFF/APPELLANT:
    Beverly James and Rodney Glen James

Brandon A. Sues
Sarah Spruill Couvillon
Gold, Weems, Bruser, Sues & Rundell
2001 MacArthur Drive
P.O. Box 6118
Alexandria, LA 71307-6118
(318) 445-6471
COUNSEL FOR DEFENDANT/APPELLEE:
    Christus Health Central Louisiana d/b/a Christus St. Frances Cabrini Hospital

**COOKS, Judge.**

The facts of this case are largely undisputed. On June 16, 2017, Plaintiff, Beverly James, was picking up her husband, Rodney James, who had been a patient at Christus St. Frances Cabrini Hospital (hereafter Christus) in Alexandria for persistent, severe headaches. Rodney was discharged that day and he and Beverly were leaving the hospital. After taking the elevator down to the first floor, the couple realized they were unsure if the discharge instructions included any prescriptions. Beverly and Rodney then returned to the second floor to speak with Rodney's nurse, Edgar Byon. After waiting a few minutes, Beverly spoke with Nurse Byon as to whether Rodney had any prescriptions to fill. As they were walking down a hallway with Nurse Byon, Beverly slipped and fell to the floor. It was alleged she slipped on a clear liquid substance and struck her head, hip and back on the fall.

Beverly and Rodney filed suit against Christus seeking damages for the injuries she incurred as a result of the fall. Christus answered the petition denying the allegations. Christus then filed an amended answer. It denied any fault or negligence, and asserted Beverly was negligent and/or at fault for the alleged accident. In the further alternative, Christus specifically asserted the negligence and/or fault of HHS, through its employees, who allegedly spilled and/or allowed a liquid substance on the floor and failed to clean up the liquid. Prior to trial, it was stipulated that damages did not exceed $50,000.00, and, as a result, a bench trial was conducted. Witnesses at trial included Beverly, Rodney, Bert Tassin and Dennis Howard.

Beverly testified on the morning of the incident she went home from the hospital to shower and change her clothes, as well as to bring a change of clothes back for Rodney. Upon leaving and returning, she traversed the same hallway where the incident later occurred. After returning and getting Rodney ready to leave the hospital, the couple took the elevator down to the first floor. As they were leaving,

Beverly stated they realized they were unsure if Rodney had any prescription to fill as part of his discharge instructions. They returned to the second floor and were able to locate Nurse Byon. After waiting approximately fifteen minutes while Nurse Byon finished assisting another patient, Beverly talked with him. As they were walking down the hospital hallway, Beverly slipped and fell to the floor after stepping in a clear, liquid substance. Beverly testified she had previously noticed a cleaning cart near the area where she fell. She also acknowledged she had walked down this same hallway four or five times that morning.

Beverly testified that she fell backwards, striking her rear, back area and the back of her head against the floor. Hospital staff assisted her and brought her to the emergency room for evaluation. She was released later that day after having x-rays performed. It was found that she suffered a cervical and lumbar strain. She was prescribed hydrocodone and instructed to follow up with her primary physician.

Approximately six weeks after the incident, she sought treatment from Dr. Jeffrey Rapp, complaining of lower back pain and neck pain. Dr. Rapp previously treated Beverly as early as 2013 through the present. He also testified he saw Beverly in April and May of 2017 for chronic neck and back pain. At one point prior to the accident a steroid injection was performed and Beverly, on occasion, required the assistance of a walker to ambulate.

Rodney corroborated Beverly's timeline of events on the day of the fall. In his deposition testimony, Rodney noted at one point prior to the fall, he saw a housekeeping cart in the area of the spill leaking liquid. He testified Beverly was walking towards him when she slipped on the liquid.

Christus presented the testimony of Bert Tassin, who was an executive administrator at the hospital. Mr. Tassin testified about five years before the accident at issue, Christus contracted with Hospital Housekeeping Services (HHS) to provide housekeeping and cleaning services for the hospital. HHS was a company which

2

performed housekeeping and cleaning services at hospital and healthcare facilities throughout the country. Mr. Tassin testified HHS hires and trains its own employees and is solely responsible for the cleaning supplies, equipment and cleaning devices used at the hospital. He further stated HHS established its own policies and procedures for its employees to follow in performing its housekeeping and cleaning services at the hospital. Mr. Tassin stated HHS employees were responsible for inspecting, cleaning and maintaining the rooms and hallways. Specifically, he stated the contract required HHS to periodically inspect the hallways. Mr. Tassin testified it was the responsibility of HHS to clear any liquid that might spill from a cleaning cart, as it was its employees and equipment that created the condition.

Christus also presented the testimony of Dennis Howard, a certified safety consultant, who stated the water more than likely came from the HHS cleaning cart. He also testified it was his opinion that no acts of Christus contributed to the accident.

Following post-trial memoranda, the trial court rendered written reasons for judgment on May 17, 2019, finding no negligence on the part of Christus. The trial court found as follows:

> Christus hired a specialized independent contractor, HHS, to perform housekeeping duties in the hallway on the date of the incident. Several trips by Beverly James on the same hallway as the housekeeping cart, did not appear to raise any concerns for not only Beverly James but also the Christus staff, in particular the nurse Edgar Byon. There was no lack of diligence on the part of Christus for not discovering the liquid but instead any responsibility would rely solely on the independent contractor HHS. As reported, regular inspections of the hallway floors took place with swift cleanup procedures. In this instance, Christus did not have actual or constructive knowledge of any liquid being on the floor as supported by the testimony of the witnesses at trial. There has been no testimony that there was anything Christus or any of its employees could have done differently to prevent the accident from occurring. In this case, the actions of Christus and its employees were reasonable and appropriate in all respects.
>
> As stated in *Smith [v. Northshore Reg'l Med. Ctr.*, 14-628 (La.App. 1 Cir. 1/26/15), 170 So.3d 173], a hired independent contractor, HHS (and not the hospital, Christus) is responsible for

3

inspecting and maintaining the hospital hallways and that the liquid located near the cart more likely than not came from the HHS cart. HHS is solely responsible for the alleged condition of the floor on the date of the event, thus responsible for any alleged damage[s] to Beverly James; therefore, this action against Christus Health Central Louisiana is dismissed.

In accordance with its written reasons, a final judgment was signed on May 17, 2019, dismissing Plaintiffs' suit against Christus. This appeal followed, wherein Plaintiffs assert the following assignment of error:

1. The trial court erred in dismissing Plaintiffs' claims as there is insufficient evidence in the record to support the finding that HHS is an independent contractor given that no evidence was introduced on Christus' right to control HHS.

## ANALYSIS

### I.      *Liability*

This court in *Bell v. Carencro Nursing Home, Inc.*, 16-190, p. 5 (La.App. 3 Cir. 9/28/16), 202 So.3d 499, 503, *writ denied*, 16-1918 (La. 12/16/16), 212 So.3d 1170, discussed the applicable law for slip and falls that occur in hospitals:

> With regard to a slip and fall accident in a hospital setting, the fourth circuit, in *Neyrey v. Touro Infirmary*, 94-78 (La.App. 4 Cir. 6/30/94), 639 So.2d 1214, 1216 (citations omitted), stated that:
>
> > A plaintiff in a slip and fall case against a hospital must show the fall occurred and injury resulted from a foreign substance on the premises. The burden then shifts to the hospital to exculpate itself from the presumption of negligence. A hospital owes a duty to its visitors to exercise reasonable care commensurate with the particular circumstances. The hospital must show that it acted reasonably to discover and correct the dangerous condition reasonably anticipated in its business activity.
>
> > The elements of proof in a slip and fall accident occurring in a hospital setting were applied to nursing homes by this court in *Williams v. Finley, Inc.*, 04-1617 (La.App. 3 Cir. 4/6/05), 900 So.2d 1040, *writ denied*, 05-1621 (La. 1/9/06), 918 So.2d 1050. Thus, Ms. Bell's burden was simply to establish by a preponderance of the evidence that she sustained an injury as a result of a foreign substance present on Evangeline Oaks' premises. She clearly carried that burden, and the burden shifted to Evangeline Oaks to establish that it "exercise[d] reasonable care commensurate with the particular circumstances." *Neyrey*, 639 So.2d at 1216.

4

Accordingly, Plaintiffs burden was to establish by a preponderance of the evidence that Beverly sustained injury as a result of a foreign substance present on Christus' property. Plaintiffs met this burden, presenting uncontroverted evidence and testimony that Beverly slipped on a clear, liquid substance that was present on the hallway floor of the hospital. Plaintiffs also introduced medical records concerning the injuries and subsequent treatment incurred by Beverly due to the fall. Therefore, at that point, the burden shifted to Christus to establish it "exercise[d] reasonable care commensurate with the particular circumstances." *Neyrey*, 639 So.2d at 1216.

The trial court dismissed Christus because it found HHS was an independent contractor, and thus, was "solely responsible for the alleged condition of the floor on the date of the event," and was liable for any damages incurred by Plaintiffs. It is this finding that Plaintiffs appeal, contending it was not supported by the evidence adduced at trial.

Under Louisiana law, a principal is generally not liable for the offenses committed by an independent contractor while performing its contractual duties. *Isgitt v. State Farm Ins. Co.*, 13-204 (La.App. 3 Cir. 10/16/13), 156 So.3d 669; *Loftus v. Kuyper*, 46,961 (La.App. 2 Cir. 3/14/12), 87 So.3d 963; *Smith v. Zellerbach*, 486 So.2d 798 (La.App. 1 Cir.), *writ denied*, 489 So.2d 246 (La.1986). The factors used to determine the existence of an independent contractor relationship are: (1) a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the contractor's own methods, without being subject to the control and direction of the principal, except as to result; (4) there is a specific price for the overall undertaking; and (5) the duration of the work is for a specific time and not

subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. *Tower Credit, Inc. v. Carpenter*, 01-2875 (La. 9/4/02), 825 So.2d 1125, *citing Hickman v. Southern Pacific Transport Company*, 262 La. 102, 117, 262 So.2d 385 (1972). The distinction between an employee and an independent contractor is a factual determination that must be decided on a case-by-case basis. *Tower Credit*, 825 So.2d 1125. The primary focus in determining whether a relationship is a principal-independent contractor relationship or an employer-employee relationship is the right to exercise control over the work. *Crews v. Blalock*, 99-311 (La.App. 3 Cir. 11/3/99), 746 So.2d 761; *Hulbert v. Democratic State Central Committee of Louisiana*, 10-1910 (La.App. 1 Cir. 6/10/11), 68 So.3d 667, *writ denied*, 11-1520 (La.10/7/11), 71 So.3d 316.

Plaintiffs first note it was Christus who bore the burden of proving HHS' status as an independent contractor. They point to this court's holding in *Smith v. Prime, Inc.*, 09-269 (La.App. 3 Cir. 10/7/09), 20 So.3d 1184. In that case, this court found an employer asserting that a claimant is an independent contractor bears the burden of proving this status. They argue no evidence was presented regarding Christus' right of control, or lack thereof, over HHS. It offered only the testimony of Bert Tassin, its employee, that Christus relied upon HHS for its housekeeping and cleaning needs. Mr. Tassin concluded HHS was an independent contractor because it hired and supervised its own employees, maintained its own procedures and purchased and used its own equipment. It is imperative to note that Mr. Tassin did not have any knowledge regarding the contract, or its terms between Christus and HHS, which purportedly designated HHS as an independent contractor. In fact, Mr. Tassin acknowledged he had not read the contract between Christus and HHS and did not know what it stated. Rather, he relied upon his own beliefs and opinions as to what the relationship was between Christus and HHS.

6

The testimony of Dennis Howard served only to further establish the liquid Beverly slipped on more than likely came from the HHS cleaning cart, a factual conclusion not in dispute by the parties. Mr. Howard also was not privy to the contract between Christus and HHS, thus could not offer any definitive testimony as to Christus' ability to control the actions of HHS.

The trial court, in its written reasons for judgment, listed the relevant factors in determining independent contractor status; however, it did not, and in fact, could not, analyze whether the contract gave Christus the *right* to control HHS. This is because the contract between Christus and HHS was never introduced at trial. The trial court relied upon *Smith v. Northshore Reg'l Med. Ctr.*, 14-628 (La.App. 1 Cir. 1/26/15), 170 So.3d 173, which involved a similar factual scenario. In that case, the plaintiff slipped and fell in a hospital, alleging she fell in an accumulation of water at a location in a hallway where a worker had been using a buffer machine immediately prior to the accident. As in this case, the hospital contracted with HHS to perform its housekeeping and cleaning services, and the worker using the buffing machine was a HHS employee. The hospital answered the petition, and later filed a third-party demand, naming HHS as a third-party defendant. The hospital filed summary judgment asserting it could not be held liable for conditions on its premises created by an independently-contracted maintenance company. Plaintiff and HHS opposed the motion contending there were disputed issues regarding the hospital's liability based on its separate negligence and/or the control maintained over HHS. The trial court granted summary judgment in the hospital's favor. The appellate court affirmed the judgment, finding after "review[ing] these [contract] provisions [we] do not find that they show [the hospital] exerted the type of control over HHS that would negate an independent contractor relationship." *Id.* at 178. The court noted the testimony of the hospital administrator in that case "confirm[ed]" its interpretation of the contract between the hospital and HHS. *Id.* at 178.

7

*Smith* is clearly distinguishable from the present case. The court in *Smith* relied on the provisions of the contract to determine the degree of control the hospital had over HHS. It was the review of the contract provisions that led the appellate court to conclude the hospital in *Smith* did not exert "the type of control over HHS that would negate an independent contractor relationship." *Id.* at 178. The trial court in this case, and this court on appeal, was not afforded the opportunity to examine the provisions of the contract between Christus and HHS. As it was Christus' burden to prove HHS's status as an independent contractor, it was incumbent on it to produce sufficient proof. Contrary to Christus' assertions, the testimony of its own employee, Bert Tassin, is not sufficient on its own to meet that burden. As noted above, in *Smith* the court noted the testimony of the hospital employee there "confirm[ed]" its interpretation of the contract. *Id.* Simply establishing there was a contract between Christus and HHS does not establish the degree to which, if at all, Christus could exercise control over HHS in the performance of its cleaning and housekeeping duties.

Plaintiffs burden was to establish by a preponderance of the evidence that Beverly sustained an injury as a result of a foreign substance present on Christus' premises. It is uncontradicted that Plaintiffs met this burden. Christus presented no testimony that it acted reasonably to discover and correct the hazardous condition. Despite a Motion to Compel filed by Plaintiffs, no maintenance or clean-up logs were offered into evidence. Therefore, we reverse and vacate the judgment of the trial court that dismissed Plaintiffs' claims against Christus as it failed to meet its burden of establishing HHS was an independent contractor. We render judgment in favor of Plaintiffs finding it met its burden of establishing Beverly sustained injuries as a result of a foreign substance present on Christus' premises.

Having a complete record before us, we will now review the evidence and assess damages. *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742.

## II. Damages.

As stated earlier, it was stipulated prior to trial that damages did not exceed $50,000.00. The record establishes that as a result of the fall, Beverly suffered injuries to her back, neck, head and right leg. It was uncontradicted that Beverly suffered from neck and back pain, as well as migraine headaches prior to the fall. Beverly testified her neck and back problems had subsided greatly after undergoing a nerve block and steroid injections approximately six months before the fall at Christus. She contended the fall at Christus significantly exacerbated these prior conditions.

Immediately after the fall, Beverly was taken to the emergency room at Cabrini Hospital. She was released after examination with a diagnosis of a cervical and lumbar strain. She was given a prescription for hydrocodone and instructed to follow up with her primary physician. She next saw Dr. Jeff Rapp, her pain management physician, for additional treatment for the continuing pain she endured following the fall. She complained to Dr. Rapp that her pain increased significantly after the fall, back to the levels she had prior to the nerve block and steroid injections. She also noted her migraine headaches were again occurring on a frequent basis.

Beverly later sought treatment at the emergency room at Avoyelles Hospital on August 18, 2017 and November 16, 2017 for the continuing pain she attributed to the injuries suffered as a result of her fall. She was referred to Dr. Mohammed Ziebo, who treated her for migraine headaches. She also underwent several weeks of physical therapy for her neck and back at Lemoine Physical Therapy. Beverly testified she suffered severe neck pain, back pain and headaches for approximately

one year following the fall. She stated she still endured occasional residual neck and back pain as of the date of trial.

At trial, Beverly introduced $6,621.25 in medical bills she incurred subsequent to the fall:

| | |
|---|---|
| St. Francis Cabrini Hospital | $2,330.00 |
| Avoyelles Hospital | $2,355.25 |
| Dr. Jeff Rapp | $ 570.00 |
| Dr. Mohammed Zeibo | $ 440.00 |
| Lemoine Physical Therapy | $ 926.00 |

There is no doubt that Beverly had a history of chronic neck and back pain, as well as recurring migraine headaches. However, a defendant's liability for damages is not mitigated by the fact that a plaintiff's pre-existing physical infirmity was responsible in part for the consequences of the plaintiff's injury by the defendant. It is clear that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. *Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993); *Bienemann v. State Farm Mut. Auto. Ins. Co.*, 08-1045 (La.App. 3 Cir. 2/4/09), 3 So.3d 621. After a thorough review of the record, we find Beverly is entitled to a general damage award of $30,000.00, along with the medical expenses she incurred of $6,621.25.

**DECREE**

For the foregoing reasons, we reverse the trial court's judgment dismissing Plaintiffs' claims against Christus. We render judgment in favor of Plaintiffs finding they met their burden of establishing Beverly James sustained injuries as a result of a foreign substance present on Christus' premises. After a de novo review of the record, we award medical damages of $6,621.25 and general damages in the amount of $30,000.00 for pain and suffering. Costs of this appeal are assessed to defendant-appellee, Christus St. Frances Cabrini Hospital.

**REVERSED AND RENDERED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

NUMBER 19-775

BEVERLY JAMES, ET VIR

VERSUS

CHRISTUS HEALTH CENTRAL LOUISIANA

**CONERY, Judge, dissents and assigns reasons.**

I respectfully dissent as the straightforward facts of the underlying trial on the merits require an affirmation.

Plaintiff Beverly James alleges injury after a fall due to liquid on the floor at Christus St. Francis Cabrini Hospital. After consideration of evidence submitted at the trial on the merits, the trial court entered judgment in favor of Christus, finding that third party independent contractor Hospital Housekeeping Services (HHS) was responsible for the upkeep of the floor, that the liquid allegedly causing the fall was more likely than not from an HHS cart, and that there was no indication that the hospital failed to act reasonably in its own actions. The majority finds insufficient evidence of HHS's status as an independent contractor. In my opinion, the record supports the trial court's determination.

Significantly, we review this case using the manifest error standard. *See, e.g.,* *Richard v. Calcasieu Cameron Hosp. Serv.*, 19-338 (La.App. 3 Cir. 12/11/19), 286 So.3d 547, *writ denied*, 20-71 (La. 5/9/00), _ So.3d _. We do not, as an appellate court, re-weigh the evidence or substitute our own findings for those of the trial court, even if we "would have decided the case differently." *See Snider v. La. Med.*

*Mut. Ins. Co.*, 14-1964, p. 5 (La. 5/5/15), 169 So.3d 319, 323.

After hearing the testimony of Christus's experienced hospital administrator, the trial judge found that the hospital used reasonable care in hiring HHS, an independent contractor, to inspect, clean, and maintain the facility's hallways. There was no evidence that any employee of the hospital knew or should have known of the liquid that Plaintiff's husband saw leaking from the hospital cart just after Plaintiff's fall. The evidence established that Plaintiff had traversed the area in question five (5) times before her fall and that her fall occurred as she was leaving the hospital within 15-18 minutes after she had recently walked the same hallway without incident. In my opinion, this evidence supports a reasonable inference that the "clear liquid leaking" from the hospital cart as seen by Plaintiff's husband was there only a short time before Plaintiff's fall.

The hospital administrator, Mr. Tassin, had been with Christus for more than 38 years and was an administrator for over 15 years. He confirmed that, as part of his position, he was "familiar with the independent contractors who have been hired to perform work on the hospital premises[.]" With regard to HHS, hired to perform housekeeping services at the hospital, Mr. Tassin explained that the independent contractor had been performing housekeeping services at Christus for 4-5 years under his watch. He testified without contradiction based on his personal knowledge of the functions HHS was expected to and had been performing, as well as his experience as hospital administrator. He was completely familiar with HHS and its duties and responsibilities. He noted especially that HHS hired its own employees to perform the work, trained its own employees, had its own supervisors who supervised HHS employees while they worked at Christus, had its own policies and procedures in place for HHS employees to follow with regard to housekeeping

policies and inspections. He knew first hand from his own observations and experience that HHS was expected to and did inspect the hospital hallways throughout the day at times determined by HHS, used its own equipment to perform housekeeping services on the premises, and inspected, maintained, and cleaned the hallway floors repeatedly, including the floor at the scene of Plaintiff's fall. Plaintiff herself characterized the floor as "very clean."

In particular, Mr. Tassin testified that HHS owned the hospital carts used by its employees and that HHS had the responsibility to clean up any liquid spilled from those carts. Mr. Tassin explained that HHS had performed satisfactorily and that he was unaware of any issues regarding its work performance in the past.

Christus also presented the testimony of Dennis Howard, an expert safety professional with experience in hazard recognition, evaluation and control and accident investigation. Pertinent to this case, Mr. Howard explained that he provided instruction in the area of hospital safety and taught classes pertaining to preventing slips, trips, and falls. After a review of all the pleadings, discovery, and depositions, Mr. Howard inspected the hospital premises and listened to the trial testimony. He was accepted by the trial court as an expert without objection and presented his undisputed expert testimony to the court:

> I think from the evidence that I've heard they [HHS] were reasonable and appropriate. They hired people with expertise. They hired people that had prior experience, even bigger than the local area. They – they provide hospital services in a number of large areas. Aramark does it in many different environments as well. Their experience had been positive in four to five years. There had been no negative experiences. No – no negative reports that I'm aware of and no accidents. **That's a reasonable expectation of them fulfilling the safe, efficient and effective delivery of services.**

(Emphasis added.) Mr. Howard opined that he "didn't see that" Christus had done anything to cause or contribute to the accident but that "they were reasonable in – in

3

what they were doing and how they had conducted themselves."

Mr. Howard further opined that the **sole responsibility** of preventing liquids from leaking from a hospital cart and preventing, noticing, or correcting a spill was on HHS, not Christus, and stated: "If it's their cart, their liquid and their responsibility to clean, maintain and inspect, sure, it would be their sole responsibility."

Plaintiffs argued in brief, and the majority agrees, that because there was a contract in place, the contract between the parties was the "best evidence" of its terms. For whatever reason, the contract does not appear to be in evidence. The majority notes that in *Smith v. Northshore Reg'l Med. Ctr, Inc.*, 14-628 (La.App. 1 Cir. 1/26/15), 170 So.3d 173, the hospital's contract with HHS for housekeeping was in evidence, whereas in this case it was not.

Respectfully, Plaintiff did not present **any** evidence disputing the testimony of Mr. Tassin and Mr. Howard. Plaintiff had an equal or greater opportunity to introduce the contract in evidence if its terms differed from the testimony of Mr. Tassin and Mr. Howard as to either the hospital's or HHS's respective responsibilities. Notably, the testimony of Mr. Tassin as to the responsibility of HHS was completely uncontradicted, and based on years of experience and first-hand knowledge. Likewise, Mr. Howard's credentials were never challenged and his opinion was uncontradicted.

Based on all the evidence, the experienced and knowledgeable trial judge accepted the uncontradicted evidence, evaluated the credibility and reliability of the witnesses, found the facts, and rendered a decision in accordance with the law and evidence. If the manifest error rule is to mean anything, it is our duty to apply it in this case. I would therefore affirm her well-reasoned decision.

4